

NUMBER 13-09-00423-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN RE HEB GROCERY COMPANY, L.P.

## On Petition for Writ of Mandamus.

# O P I N I O N

## Before Chief Justice Valdez and Justices Yañez and Benavides
## Opinion by Chief Justice Valdez[1]

Through this original proceeding, relator, HEB Grocery Company, L.P. ("HEB"), seeks to compel the trial court to vacate its order denying HEB's motion to compel arbitration. We conditionally grant the petition for writ of mandamus.

### I. BACKGROUND

Jaime Bustamante, the real party in interest, was employed by HEB as a meat cutter. He was injured in the course and scope of his employment and brought suit against HEB, a non-subscriber to workers' compensation, for negligence and gross negligence.

---

[1] See TEX. R. APP. P. 47.4 (distinguishing opinions and memorandum opinions); TEX. R. APP. P. 52.8(d) ("When granting relief, the court must hand down an opinion as in any other case.").

HEB moved to compel arbitration of Bustamante's claims based on his participation in HEB's Work Injury Benefit Plan (the "Plan"). As part of his employment with HEB, Bustamante signed an "Election and Agreement Form" (the "Election") through which he, as a "Partner," elected to receive comprehensive benefits coverage under the Plan. The form signed by Bustamante specifically provides that:

> Partner . . . elects to receive [c]omprehensive benefits coverage under the Plan and agrees to irrevocably and unconditionally release all claims and causes of action whether now existing or arising in the future and to waive the right to sue . . . for the occupational injury, death or disease of the Partner arising out of and in the course and scope of employment, in exchange for the right to receive [c]omprehensive benefits coverage under the terms of the Plan. . . .

> Partner . . . agrees that recovery from H-E-B . . . for occupational injury, death, or disease, arising out of and in the course and scope of employment, is limited to benefits provided by the Plan. . . .

The Election further includes a specific "Arbitration" provision which provides:

> It is agreed that any and all disputes, claims, (whether tort, contract, statutory or otherwise) and/or controversies which relate, in any manner, to this Agreement, the Plan, or the Trust or to the occupational injury, death or disease of Partner shall be submitted to final and binding arbitration under the Federal Arbitration Act, in accordance with the terms and conditions outlined in the SPD under the heading "Arbitration of Disputes." The claims covered by this agreement to arbitrate include, but are not limited to, those which relate to the following:

> a. The formation, application and interpretation of this Agreement.

> b. Eligibility for benefits from the Trust, coverage under the Plan or claims for damages or monetary award.

> c. That H-E-B has discharged or in any manner discriminated against Partner because Partner in good faith filed a claim, hired a lawyer to represent him or her in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Agreement, the Plan or the TWCA, or has testified in any such proceeding.

The Election includes a section entitled "Election of Comprehensive Benefits [-] Release, Waiver, Indemnity, and Arbitration Agreement," which informed Bustamante that by signing

2

the agreement, he was giving up his right to sue HEB and related entities "in exchange for the agreement to provide certain benefits" and that he was agreeing to "arbitrate all future disputes."

HEB filed a motion to compel arbitration arguing that Bustamante was required to arbitrate his claims under the agreement and Plan. By written response, Bustamante argued solely that the arbitration agreement was illusory because HEB retained the "unfettered" right to amend or terminate the plan. HEB filed an amended motion to compel arbitration and filed affidavits in support of its motion to compel. Following a non-evidentiary hearing, the trial court denied the motion to compel arbitration. This original proceeding ensued.

The trial court's order denying arbitration did not specify whether the arbitration agreement in this case was governed by the Federal Arbitration Act ("FAA") or the Texas Arbitration Act ("TAA"). See 9 U.S.C. §§ 1-16 (1999) (FAA); TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.001-.098 (Vernon 1997 & Supp. 2008) (TAA). However, HEB seeks review of the trial court's order pursuant to the FAA. See Jack B. Anglin Co., Inc. v. Tipps, 842 S.W.2d 266, 272 (Tex. 1992) (providing that litigants alleging entitlement to arbitration under the FAA and TAA must pursue parallel proceedings), and we proceed to address this matter accordingly.

## II. FAA

The FAA applies to transactions that involve commerce. See 9 U.S.C. § 2 (2005). "Commerce" has been broadly defined and encompasses contracts relating to interstate commerce. See In re Gardner Zemke Co., 978 S.W.2d 624, 626 (Tex. App.–El Paso 1998, orig. proceeding). The FAA does not require a substantial effect on interstate commerce; rather, it requires commerce to be involved or affected. See L & L Kempwood

3

*Assocs., L.P. v. Omega Builders, Inc. (In re L & L Kempwood Assocs., L.P.),* 9 S.W.3d 125, 127 (Tex. 1999) (orig. proceeding); *In re Merrill Lynch Trust Co. FSB*, 123 S.W.3d 549, 553 (Tex. App.–San Antonio 2003, orig. proceeding).

According to affidavit testimony proffered by Mark S. Lewis, the Director of Corporate Traffic in the Transportation Logistics Department of HEB, HEB conducts its business activities across state lines and is involved in numerous transactions involving interstate commerce. Lewis's affidavit states that HEB purchases its products for retail in Texas from numerous states and the Pacific Rim countries, and includes specific details regarding the out-of-state origin of certain products that it sells. Absent evidence to the contrary, "the relationship between an employer who is regularly engaged in activities related to interstate commerce and its employees is affected by interstate commerce as a matter of law and implicates commerce clause issues." *In re Big 8 Food Stores, Ltd.*, 166 S.W.3d 869, 880 (Tex. App.–El Paso 2005, orig. proceeding).

Moreover, the Election and Plan themselves expressly provide that arbitration will be handled "under the Federal Arbitration Act." *See In re Brock Specialty Servs., LTD*., 286 S.W.3d 649, 653 (Tex. App.–Corpus Christi 2009, orig. proceeding); *In re People's Choice Home Loan, Inc.*, 225 S.W.3d 35, 40 (Tex. App.–El Paso 2005, orig. proceeding); *In re Kellogg Brown & Root*, 80 S.W.3d 611, 617 (Tex. App.–Houston [1st Dist.] 2002, orig. proceeding); *In re Alamo Lumber Co.*, 23 S.W.3d 577, 579 (Tex. App.–San Antonio 2000, orig. proceeding [leave denied]); *see also Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 478-79 (1989). The Plan itself states that HEB is engaged in transactions involving interstate commerce and that Bustamante's employment involves such commerce.

The FAA may govern a written arbitration clause enforced in Texas state court if the parties have expressly contracted for the FAA's application. *In re AdvancePCS Health,*

4

*L.P.*, 172 S.W.3d 603, 605-06 & n.3 (Tex. 2005) (orig. proceeding) (per curiam). When parties have designated the FAA to govern their arbitration agreement, their designation should be upheld. *See id.* at 606 & n.3; *In re Brock Specialty Servs., LTD.*, 286 S.W.3d at 653; *see also In re Int'l Bank of Commerce*, No. 13-07-00693-CV, 2008 Tex. App. LEXIS 519, at **16-17 (Tex. App.–Corpus Christi Jan. 18, 2008, orig. proceeding [mand. denied]) (mem. op.). Bustamante asserts a defense against arbitration, generally, but does not contest the application of the FAA. Accordingly, pursuant to the parties' agreement, we apply the FAA.

When a trial court erroneously denies a motion to arbitrate under the FAA, mandamus is the appropriate remedy. *In re Halliburton Co.*, 80 S.W.3d 566, 573 (Tex. 2002) (orig. proceeding); *see* 9 U.S.C.A. § 4 (2005) (section 4 of the FAA provides, in part, that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement"); *Nabors Drilling USA, LP v. Carpenter*, 198 S.W.3d 240, 246 (Tex. App.–San Antonio 2006, orig. proceeding).

### III. STANDARD OF REVIEW

To be entitled to mandamus relief, a petitioner must show that the trial court clearly abused its discretion and that the relator has no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding) (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding)); *see In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 462 (Tex. 2008) (orig. proceeding). We may not substitute our judgment for that of the trial court with respect to the resolution of factual issues or matters within the trial court's discretion. *Walker*, 827 S.W.2d at 839-40. The relator must show that the trial court could reasonably have reached only one decision.

5

*Id.* The reviewing court cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id.* With respect to the trial court's decision on legal issues, our review is much less deferential. *Id.* at 840. A trial court has no discretion in determining what the law is or applying the law to the facts. *Id.* Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id*.

## IV. VALIDITY AND SCOPE

A party seeking to compel arbitration by a writ of mandamus must: (1) establish the existence of a valid agreement to arbitrate under the FAA, and (2) show that the claims in dispute are within the scope of the agreement. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). "Whether a valid arbitration agreement exists is a legal question subject to de novo review." *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding). In determining the validity of agreements to arbitrate which are subject to the FAA, we generally apply state-law principles governing the formation of contracts. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (orig. proceeding) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). If the trial court finds there is a valid agreement to arbitrate, the burden shifts to the party opposing arbitration to prove his defenses. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

Once a valid agreement to arbitrate has been established, the court must then determine whether the arbitration agreement covers the nonmovants' claims. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding). To determine whether an existing arbitration agreement covers a party's claims, a court must "focus on the complaint's factual allegations rather than the legal causes of action asserted." *Id.* at 754. Federal policy embodied in the FAA favors agreements to arbitrate, and courts must

resolve any doubts about an arbitration agreement's scope in favor of arbitration. *Id.* at 753. If the arbitration agreement encompasses the claims and the party opposing arbitration has failed to prove its defenses, the trial court has no discretion but to compel arbitration and stay its own proceedings. *Id*. at 753-54; *D.R. Horton, Inc. v. Brooks*, 207 S.W.3d 862, 866-67 (Tex. App.–Houston [14th Dist.] 2006, no pet.); *Feldman/Matz Interests, L.L.P. v. Settlement Capital Corp.*, 140 S.W.3d 879, 883 (Tex. App.–Houston [14th Dist.] 2004, no pet.).

In the instant case, the Election provides that it covers "all future disputes" and specifically includes "occupational injury, death or disease of the Partner arising out of and in the course and scope of employment." The Plan itself states that "[i]n an effort to provide a speedy resolution of any potential issues, both H-E-B and its Partners, agree to arbitration of any disputes related to an on-the-job injury/incident or occupational illness." The Plan's arbitration provision states that it applies to "any and all disputes, claims (whether tort, contract, statutory or otherwise) and/or controversies which relate, in any manner to this agreement, the Plan or the Trust, or to any on-the-job or occupational injury, death or disease of Partner."

Bustamante's arguments below and on appeal do not deny the existence of the Election or the Plan or his signed acknowledgment thereof, nor does he argue that his claims fall outside the scope of the Plan. Accordingly, we conclude that relator has established the existence of an arbitration agreement, and, given the breadth of the arbitration agreement, that the claims in this lawsuit fall within the scope of this agreement. *See, e.g.*, *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 754.

## V. ILLUSORY

Having concluded that a valid arbitration agreement exists and Bustamante's claims

7

fall within the scope of that agreement, we now turn our attention to Bustamante's alleged defenses to arbitration. *See In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 367 (Tex. App.–Houston [14th Dist.] 2000, orig. proceeding) (disapproved in part on other grounds by *In re Halliburton*, 80 S.W.3d at 570); *City of Alamo v. Garcia*, 878 S.W.2d 664, 665 (Tex. App.–Corpus Christi 1994, no writ). Bustamante contends that the arbitration agreement is illusory because "under the terms of the arbitration agreement, HEB retained the absolute and unfettered right to unilaterally amend or terminate its Work benefit Injury Plan at any time."

An arbitration agreement may be illusory if a party can unilaterally avoid the agreement to arbitrate. *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 677; *D.R. Horton, Inc.*, 207 S.W.3d at 867 ("An illusory promise is one that fails to bind the promisor because he retains the option of discontinuing performance without notice."). Stated otherwise, a promise is illusory when it fails to bind the promisor, who retains the option of discontinuing performance. *See Light v. Centel Cellular Co.*, 883 S.W.2d 642, 645 (Tex. 1994); *see also O'Farrill Avila v. Gonzalez*, 974 S.W.2d 237, 244 (Tex. App.–San Antonio 1998, writ denied).

In the instant case, the Election provides that "H-E-B and the Trustees reserve the right to amend or terminate the Plan. Non-material changes, increased benefits, procedural changes, and changes that do not apply to Partner will not terminate this Agreement and it shall remain in full force and effect . . . ." The Election expressly provides that the "[Summary Plan Description] attached to the Agreement and the Plan and Trust, which are available for your review, are incorporated in this Agreement by reference." The Summary Plan Description further addresses termination or modification of the agreement:

> If the Plan Changes or Ends: Although H-E-B expects to continue the Plan

8

indefinitely, H-E-B reserves the right to amend or terminate the Plan at any time. No amendment shall apply to any claim of which H-E-B has actual notice on the date of amendment. No amendment or termination shall be effective until 10 days after reasonable notice of termination or amendment is provided by H-E-B or as to claims that arose prior to the date of amendment or termination. No amendment or termination of the Plan will affect any claim for expenses incurred prior to the date the amendment or termination is adopted, except as permitted by law. No amendment may divert any part of the assets of the trust fund for purposes other than providing benefits under the Plan and paying the reasonable expenses of administering the Plan. . . .

Finally, the "Partner Acknowledgment" further states that "H-E-B and the Trustees reserve the right to amend or terminate the Plan subject to the notice requirements and the provisions of the Plan."

The Texas Supreme Court has considered and expressly rejected the argument that language similar to that herein rendered an arbitration agreement illusory. *See In re Halliburton Co.*, 80 S.W.3d at 570. In *Halliburton*, the employee dispute resolution program provided that "no amendment shall apply to a Dispute of which the Sponsor [Halliburton] had actual notice on the date of amendment." *See id.* at 570. The program further stated that "termination shall not be effective until 10 days after reasonable notice of termination is given to Employees or as to Disputes which arose prior to the date of termination." *See id.* The supreme court concluded that Halliburton could not avoid its promise to arbitrate by amending the provision or terminating it altogether and held that the provision was not illusory. *See id.*

The Houston Court of Appeals has expressly considered and rejected the argument that the specific arbitration agreement at issue herein is illusory. *See In re H.E. Butt Grocery Co.*, 17 S.W.3d at 370. In reaching this conclusion, our sister court noted that:

First, the SPD specifically provides that while "HEB expects to continue the Plan indefinitely . . . no amendment or termination of the Plan will affect any claim for expenses incurred prior to the date the amendment or termination

9

is adopted, except as provide by law." In other words, HEB's right to terminate the Plan does not deprive Swinton of benefits already accrued under the Plan. Second, if HEB terminates the Plan, it will leave Swinton with all of his common law rights against HEB as a non-subscriber. Third, assuming HEB's promise to provide benefits under the Plan is illusory, the parties formed a unilateral contract when HEB actually provided, and Swinton accepted, benefits in return for Swinton's promise not to sue. Finally, the fact that the plan administrator has discretion to interpret the Plan does not excuse HEB from its obligation to pay benefits. It merely provides the means by which a court can review the administration of the Plan under ERISA. Clearly, the benefit agreement is not illusory.

*See id.* (internal citations omitted). As in the foregoing case, we note that Bustamante herein also sought and received employee benefits under the Plan prior to filing suit against HEB.

Contrary to Bustamante's argument, HEB did not retain a unilateral right to terminate or change the provisions of the arbitration agreement, and accordingly, we reject Bustamante's arguments that the agreement is illusory. *See J.M. Davidson, Inc.*, 128 S.W.3d at 230; *In re Halliburton*, 80 S.W.3d at 569-70; *In re H.E. Butt Grocery Co.*, 17 S.W.3d at 370. HEB's right to amend or terminate the Program is qualified: any amendment or termination of the arbitration agreement is subject to ten days' notice to the employee and is inapplicable to claims that have already been initiated. As such, the promise to arbitrate is not illusory, and the agreement to arbitrate is enforceable. *See In re Halliburton*, 80 S.W.3d at 569-70; *In re H. E. Butt Grocery Co.*, 17 S.W.3d at 370; *see also In re Kellogg Brown & Root*, 80 S.W.3d at 616 (holding that an agreement to arbitrate was not illusory when it could be amended or terminated by giving at least ten days' notice and such amendments would not apply to a dispute for which proceedings had been initiated); *Nabors Drilling USA, LP*, 198 S.W.3d at 248-49 (reaching the same result based on similar language).

## VI. Conclusion

In conclusion, having rejected Bustamante's alleged defense to arbitration, we conditionally grant HEB's petition for writ of mandamus. We direct the trial court to vacate its order denying arbitration and to issue an order compelling arbitration. We are confident that the trial court will promptly comply, and our writ will issue only if it does not.

_____
ROGELIO VALDEZ
Chief Justice

Opinion delivered and filed this
the 28th day of September, 2009.