

# NUMBER 13-10-00247-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| UNIT TEXAS DRILLING, LLC, UNIT DRILLING COMPANY, AND CLIFF WELKER, | Appellants, |
| **v.** | |
| CAESAR MORALES, JR. AND RHONDA MORALES, | Appellees. |

### On Appeal from the 23rd District Court of Matagorda County, Texas.

# MEMORANDUM OPINION

**Before Justices Yañez, Rodriguez, and Garza**
**Memorandum Opinion by Justice Yañez**

Through this appeal, Unit Texas Drilling, L.L.C., Unit Drilling Company, and Cliff Welker, seek to vacate an order denying their motion to compel arbitration. We reverse and remand.

## I. BACKGROUND

Appellees, Caesar Morales and his wife, Rhonda Morales, filed suit against appellants[1] for injuries sustained by Caesar while working as a field mechanic for his employer, Unit Texas Drilling, L.L.C. ("Unit Texas"). Unit Texas is a non-subscriber to the Texas Workers Compensation Act. *See* TEX. LAB. CODE ANN. § 406.002(a) (Vernon 2006) (providing that, except for public employers and as otherwise provided by law, an employer may elect to obtain workers' compensation insurance coverage). Appellants filed a motion to compel arbitration based on Morales's participation in the "Occupational Injury Benefit Plan" (the "Plan") offered by Unit Texas. The "Receipt, Safety Pledge, and Arbitration Acknowledgment" ("Receipt"), signed by Caesar, provides, in relevant part:

> **RECEIPT OF MATERIALS.** By my signature below, I acknowledge that I have received and read (or had the opportunity to read) the Summary Plan Description (the "SPD") for the Unit Texas Drilling, L.L.C. Occupational Injury Benefit Plan, effective on the Effective Date set forth on the cover of the Summary Plan Description.
>
> **INJURY NOTICE AND MEDICAL PROVIDERS.** I understand and agree that if I am injured on the job, I must notify my Rig Manager by the end of my work shift on the date of the injury and receive any medical care from a Plan-approved physician in order to receive benefits under the Plan.
>
>      . . . .
>
> **ARBITRATION.** I also acknowledge that this SPD includes a mandatory Company policy requiring that claims or disputes relating to the cause of an on-the-job injury (that cannot otherwise be resolved between the Company and me) must be submitted to an arbitrator, rather than a judge and jury in court. I understand that by receiving this SPD and becoming employed (or continuing my employment) with the Company at any time on or after the Effective Date, I am accepting and agreeing to comply with these arbitration requirements. I understand that the Company is also accepting and agreeing to comply with these arbitration requirements. All covered claims brought by my spouse, children, beneficiaries, representatives, executors, administrators, guardians, heirs or assigns are also subject to the Company's

---

[1] Caesar Morales was employed by Unit Texas Drilling, L.L.C. Unit Drilling Company is the parent company of Unit Texas Drilling, L.L.C., and Cliff Welker was Morales's supervisor.

2

arbitration policy, and any decision of an arbitrator will be final and binding on such persons and the Company.

The Plan contains further information regarding arbitration. The Plan informs employees that it includes a "formal appeals process for Plan benefit claims," and provides that if employees are "not satisfied with how [their] injury is handled," the Plan "includes arbitration procedures to resolve other injury-related disputes between you and the company quickly and fairly." The Plan goes into further detail and describes the "advantages of arbitration." The Plan's arbitration provisions are lengthy and detailed, and provide in relevant part:

> The Company has adopted the following **mandatory policy** requiring that you comply with the following arbitration requirements.
>
> **Arbitration Requirement**
>
> All claims or disputes described below that cannot otherwise be resolved between the Company and you are subject to **final and binding** arbitration. **This binding arbitration is the only method for resolving any such claim or dispute.**
>
> **Claims Covered by this Arbitration Requirement**
>
> This arbitration requirement applies to:
>
> ▸ any legal or equitable claim or dispute relating to creation, enforcement[,] or interpretation of the arbitration provisions contained in (1) a Receipt, Safety Pledge, and Arbitration Acknowledgment form[,] or (2) this arbitration requirement; and
>
> ▸ any legal or equitable claim by or with respect to you for any form of physical or psychological damage, harm[,] or death which relates to an accident, occupational disease, or cumulative trauma (including, but not limited to, claims of negligence or gross negligence or discrimination; and claims for assault, battery, negligent hiring/training/supervision/retention, emotional distress, retaliatory discharge, or violation of any other noncriminal federal, state or other governmental common law, statute, regulation or ordinance in connection with a job-related injury, regardless of whether the common law doctrine was recognized or whether the statute, regulation[,] or ordinance was enacted before or after the Effective

3

Date of this booklet).

This includes all claims listed above that you have now or in the future against the Company . . . .

The determination of whether a claim is covered by these provisions will also be subject to arbitration under this arbitration requirement. **Neither you nor the Company will be entitled to a bench or jury trial on any claim covered by this arbitration requirement.** . . . These provisions also apply to any claims that may be brought by your spouse, children, beneficiaries, representatives, executors, administrators, guardians, heirs[,] or assigns. This binding arbitration will be the sole and exclusive remedy for resolving any such claims or disputes.

Appellants filed a motion to compel arbitration arguing that appellees were required to arbitrate their claims pursuant to the Receipt, the SPD, and the Plan. By written opposition to the motion to compel, appellees contended that the arbitration agreement was invalid because: (1) their claims arise under the Texas Workers Compensation Act, and therefore, the Federal Arbitration Act is preempted by the McCarran-Ferguson Act, *see* 15 U.S.C. § 1012(b); (2) the arbitration agreement violates section 406.033 of the Texas Labor Code regarding non-subscriber employees, *see* TEX. LAB. CODE ANN. § 406.033 (Vernon 2006); (3) the arbitration agreement is unconscionable because it requires mandatory enrollment; (4) the agreement is ambiguous; and (5) the Plan is unconscionable because it requires injured employees to report their injuries before the end of the work shift in which the injury occurred. Appellants filed a reply brief in response to these arguments. Following a non-evidentiary hearing, the trial court denied the motion to compel arbitration.[2]

The trial court's order denying arbitration did not specify whether the arbitration

---

[2] In their briefing, appellees contend that the Plan and SPD were not offered into evidence at the hearing on the motion to compel arbitration. However, the Receipt, the Plan, and the SPD were all attached and incorporated by reference into appellants' verified motion to compel arbitration. Accordingly, these documents are properly part of the trial and appellate record in this matter. In contrast, appellees' response to the motion to compel arbitration contained argument and authorities, but no evidence.

4

agreement in this case was governed by the Federal Arbitration Act ("FAA") or the Texas Arbitration Act ("TAA"). *See* 9 U.S.C. §§ 1-16 (2009) (FAA); TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.001-.098 (Vernon 1997 & Supp. 2009) (TAA). Accordingly, appellants filed both an original proceeding and an appeal. *See Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992) (providing that litigants alleging entitlement to arbitration under the FAA and TAA must pursue parallel proceedings). Concluding that appellants possessed an adequate remedy by appeal, this Court denied the petition for writ of mandamus. *In re Unit Tex. Drilling, L.L.C.*, No. 13-10-00267-CV, 2010 Tex. App. LEXIS 5320, at *1-*2 (Tex. App.–Corpus Christi July 6, 2010, orig. proceeding) (per curiam) (mem. op.); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (Vernon Supp. 2009) (now allowing for an interlocutory appeal of a matter subject to the Federal Arbitration Act to the same extent as allowed under federal law); *In Re Helix Energy Solutions Group, Inc.*, 303 S.W.3d 386, 395 n.7 (Tex. App.–Houston [14th Dist.] 2010, orig. proceeding).

## II. FAA

We first consider whether appellants have established that the FAA applies in the instant case. The FAA applies to transactions that involve commerce. *See* 9 U.S.C. § 2 (2005). "Commerce" has been broadly defined and encompasses contracts relating to interstate commerce. *See In re Gardner Zemke Co.*, 978 S.W.2d 624, 626 (Tex. App.–El Paso 1998, orig. proceeding). The FAA does not require a substantial effect on interstate commerce; rather, it requires commerce to be involved or affected. *See L & L Kempwood Assocs., L.P. v. Omega Builders, Inc. (In re L & L Kempwood Assocs., L.P.),* 9 S.W.3d 125, 127 (Tex. 1999) (orig. proceeding); *In re Merrill Lynch Trust Co. FSB*, 123 S.W.3d 549, 553 (Tex. App.–San Antonio 2003, orig. proceeding).

The SPD states that Unit Texas "is engaged in transactions involving interstate

5

commerce (for example, purchasing goods and services from outside Texas which are shipped to Texas, and traveling on interstate roadways) and your employment involves such commerce." The SPD further provides that the "Federal Arbitration Act will govern the interpretation, enforcement, and proceedings under this arbitration requirement." The SPD expressly excludes application of the TAA: "The arbitrator will apply the substantive law (and the laws of remedies) of Texas (other than the Texas General Arbitration Act), or federal law, or both, depending on the claims asserted."

The FAA may govern a written arbitration clause enforced in Texas state court if the parties have expressly contracted for the FAA's application. *In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 605-06 & n.3 (Tex. 2005) (orig. proceeding) (per curiam). When parties have designated the FAA to govern their arbitration agreement, their designation should be upheld. *See id.* at 606 & n.3; *In re HEB Grocery Co., L.P.*, 299 S.W.3d 393, 396-97 (Tex. App.–Corpus Christi 2009, orig. proceeding); *In re Brock Specialty Servs., LTD.*, 286 S.W.3d 649, 653 (Tex. App.–Corpus Christi 2009, orig. proceeding); *In re People's Choice Home Loan, Inc.*, 225 S.W.3d 35, 40 (Tex. App.–El Paso 2005, orig. proceeding); *In re Kellogg Brown & Root*, 80 S.W.3d 611, 617 (Tex. App.–Houston [1st Dist.] 2002, orig. proceeding); *In re Alamo Lumber Co.*, 23 S.W.3d 577, 579 (Tex. App.–San Antonio 2000, orig. proceeding); *see also Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 478-79 (1989). Moreover, if the parties choose for their arbitration agreement to be governed by the FAA, the agreement should be enforced regardless of the parties' nexus to interstate commerce. *In re ReadyOne Indus.*, 294 S.W.3d 764, 769 (Tex. App.–El Paso 2009, orig. proceeding); *In re Kellogg Brown & Root*, 80 S.W.3d at 617; *see also In Re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 896 (Tex. App.–Houston [14th Dist.] 2006, orig. proceeding) ("Courts honor the parties' agreement to be bound by the FAA, upholding

6

choice-of-law provisions providing for application of the FAA."). Accordingly, pursuant to the parties' agreement, we apply the FAA.

### III. VALIDITY AND SCOPE

A party seeking to compel arbitration must: (1) establish the existence of a valid agreement to arbitrate under the FAA, and (2) show that the claims in dispute are within the scope of the agreement. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). "Whether a valid arbitration agreement exists is a legal question subject to de novo review." *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding). In determining the validity of agreements to arbitrate which are subject to the FAA, we generally apply state-law principles governing the formation of contracts. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (orig. proceeding) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). If the trial court finds there is a valid agreement to arbitrate, the burden shifts to the party opposing arbitration to prove his defenses. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

Once a valid agreement to arbitrate has been established, the court must then determine whether the arbitration agreement covers the non-movants' claims. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding). To determine whether an existing arbitration agreement covers a party's claims, a court must "focus on the complaint's factual allegations rather than the legal causes of action asserted." *Id.* at 754. Federal policy embodied in the FAA favors agreements to arbitrate, and courts must resolve any doubts about an arbitration agreement's scope in favor of arbitration. *Id.* at 753. If the arbitration agreement encompasses the claims and the party opposing arbitration has failed to prove its defenses, the trial court has no discretion but to compel arbitration and stay its own proceedings. *Id.* at 753-54; *D.R. Horton, Inc. v. Brooks*, 207

7

S.W.3d 862, 866-67 (Tex. App.–Houston [14th Dist.] 2006, no pet.); *Feldman/Matz Interests, L.L.P. v. Settlement Capital Corp.*, 140 S.W.3d 879, 883 (Tex. App.–Houston [14th Dist.] 2004, no pet.).

In the instant case, the Receipt states that arbitration is required for "claims or disputes relating to the cause of an on-the-job injury." The SPD requires arbitration for "[a]ll claims or disputes . . . between the Company and you." The arbitration requirement applies to claims or disputes "relating to creation, enforcement[,] or interpretation of the arbitration provisions," and to any claims regarding "any form of physical or psychological damage, harm[,] or death."

Appellees' arguments below and on appeal do not deny the existence of the SPD or Morales's signed acknowledgment thereof, nor do they argue that their claims fall outside the scope of the arbitration provision. Accordingly, we conclude that appellants have established the existence of an arbitration agreement, and, given the breadth of the arbitration agreement, that the claims in this lawsuit fall within the scope of this agreement. *See, e.g.*, *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 754. Having concluded that a valid arbitration agreement exists and appellees' claims fall within the scope of that agreement, we now turn our attention to appellees' alleged defenses to arbitration.. *See J.M. Davidson, Inc.*, 128 S.W.3d at 227 (stating that if the trial court finds a valid agreement, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration); *In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 367 (Tex. App.–Houston [14th Dist.] 2000, orig. proceeding) (*disapproved in part on other grounds by In re Halliburton*, 80 S.W.3d at 570); *City of Alamo v. Garcia*, 878 S.W.2d 664, 665 (Tex. App.–Corpus Christi 1994, no writ).

## IV. THE MCCARRAN-FERGUSON ACT

8

Appellees argue that the McCarran-Ferguson Act (the "Act") applies to this case, so the FAA cannot.[3]  *See* 15 U.S.C. §§ 1011-1015.  The Act was passed by Congress in 1945 to ensure that the states have the ability to tax and regulate the business of insurance. *Great Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415, 421 (Tex. 1995). Under this Act, a state may exercise its police power to regulate and tax the business of insurance, including those insurance activities and transactions occurring within its borders. 15 U.S.C. §§ 1011-12; *see Combs v. STP Nuclear Operating Co.*, 239 S.W.3d 264, 269 (Tex. App.–Austin 2007, pet. denied).  Section 1012 of the Act provides, in part, as follows:

> (a) State regulation.  The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
>
> (b) Federal regulation.  No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance . . . .

15 U.S.C. § 1012.  In short, under the Act, state laws enacted for the purpose of regulating insurance prevail over general federal laws that do not specifically relate to the business of insurance.  *See id.* § 1012(b); *In re Autotainment Partners Ltd. P'ship*, 183 S.W.3d 532, 537 (Tex. App.–Houston [14th Dist.] 2006, orig. proceeding); *see also In re Kepka*, 178 S.W.3d 279, 288 (Tex. App.–Houston [1st Dist.] 2005, orig. proceeding), *overruled in part on other grounds by In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 647 (Tex. 2009).

We apply a three-part test to determine if the Act precludes the application of a

---

[3] The issue of whether the Federal Arbitration Act is "reverse preempted" by the McCarran-Ferguson Act has been presented to the Texas Supreme Court, but has not yet been decided by that court.  *In re Nexion Health at Humble, Inc.*, No. 04-0360, 2005 Tex. LEXIS 769, at *1, 49 Tex. Sup. J. 43 (Tex. Oct. 14, 2005) (orig. proceeding) (per curiam) (op. on reh'g) ("Because this issue has not been reviewed by the courts below, we decline to reach the issue and express no opinion as to the merits of this argument.").

9

federal statute to preempt state insurance law. *See Lovilia Coal Co. v. Williams*, 143 F.3d 317, 324 (7th Cir. 1998); *In re Autotainment Partners Ltd. P'ship*, 183 S.W.3d at 537; *In re Kepka*, 178 S.W.3d at 288. Under this test, the Act precludes preemption if: (1) the federal statute at issue does not "specifically relat[e] to the business of insurance"; (2) the state statute at issue was "enacted for the purpose of regulating the business of insurance"; and (3) the application of federal statute would "invalidate, impair, or supersede" the state statute. *Lovilia Coal Co.*, 143 F.3d at 324; *In re Autotainment Partners Ltd. P'ship*, 183 S.W.3d at 537; *In re Kepka,* 178 S.W.3d at 288; *see generally U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491, 500-01 (1993) ("Ordinarily, a federal law supersedes any inconsistent state law. The [Act] reverses this by imposing what is, in effect, a clear-statement rule, a rule that state laws enacted 'for the purpose of regulating the business of insurance' do not yield to conflicting federal statutes unless a federal statute specifically requires otherwise."). All three factors must be satisfied for the Act to preclude the application of a given federal statute. *Lovilia Coal Co.*, 143 F.3d at 324; *In re Autotainment Partners Ltd. P'ship*, 183 S.W.3d at 537; *In re Kepka*, 178 S.W.3d at 288.

Appellees contend that the Act precludes the application of the FAA in the instant case because the FAA does not "specifically relat[e] to the business of insurance"; the Texas Workers Compensation Act was "enacted for the purpose of regulating the business of insurance"; and the application of the FAA would "invalidate, impair, or supersede" the workers compensation act. Appellees contend that application of the FAA would impair or supersede the workers compensation act in two ways. Appellees first argue that application of the FAA would conflict with the workers compensation act because they have rights under section 406.033 of the act to bring non-subscriber claims against Caesar's employer. *See* TEX. LAB. CODE ANN. § 406.033. Citing section 410.104 of the workers

10

compensation act, which allows the parties to mutually elect binding arbitration as an alternative to the contested case hearing, appellees also argue that the Texas Workers Compensation Act does not allow for arbitration of non-subscriber injuries. *See id.* § 410.104 (Vernon 2006). For the purposes of further discussion herein, we will assume, without deciding, that the workers compensation act was enacted for the purpose of regulating the business of insurance.

Section 406.033(a) of the Texas Labor Code refers to causes of action against a non-subscriber employer "to recover damages for personal injuries or death sustained by an employee in the course and scope of the employment." *Id.* § 406.033(a). Texas Labor Code section 406.033(e), which applies to non-subscribers such as Unit Texas, provides: "A cause of action described in Subsection (a) may not be waived by an employee before the employee's injury or death. Any agreement by an employee to waive a cause of action or any right described in Subsection (a) before the employee's injury or death is void and unenforceable." *Id*. § 406.033(e).

The Texas Supreme Court has examined the interaction between section 406.033 and arbitration and has held that section 406.033(e) does not render an arbitration agreement void. *In re Golden Peanut Co., LLC*, 298 S.W.3d 629, 631 (Tex. 2009, orig. proceeding) (per curiam) ("[A]n agreement to arbitrate is a waiver of neither a cause of action nor the rights provided under section 406.033(a), but rather an agreement that those claims should be tried in a specific forum. Accordingly, section 406.033(e) does not render the arbitration agreement void." (Internal citations omitted)); *see also In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419 (Tex. 2010) (orig. proceeding). In short, an agreement to arbitrate does not extinguish a party's substantive rights, but instead provides an alternative arbitral, rather than judicial, forum for the resolution of disputes. *In re Golden*

11

*Peanut Co., L.L.C.*, 298 S.W.3d at 631. Accordingly, we conclude that application of the FAA does not "invalidate, impair, or supersede" section 406.033 of the workers compensation act in this matter.

Appellees next contend that "[a]rbitration is only available in subscriber cases." Appellees cite section 410.104(a) of the workers compensation act, which states that "[a]rbitration may be used only to resolve disputed benefit issues and is an alternative to a contested case hearing." TEX. LAB. CODE ANN. § 410.104(a). Section 410.104(a) further provides for parties to engage, by agreement, in arbitration if "issues remain unresolved after a benefit review conference." *Id*. Obviously, by its own terms, section 410.104(a) assumes the parties will have engaged in a benefit review conference and will face the prospect of a future contested case hearing, and both the conference and hearing are features available only within the context of worker compensation cases involving subscribers. *See id.* Accordingly, we agree with appellees that section 410.104(a) applies to subscribers of workers compensation, rather than non-subscribers such as Unit Texas. *See id.* § 410.104; *see also id.* § 406.002(b) (Vernon 2006) (stating that an "employer who elects to obtain coverage is subject to this subtitle"). While we agree that section 410.104(a) applies to subscriber cases, we do not agree that the existence of a statutory provision allowing agreed arbitration in subscriber cases inherently precludes the possibility of arbitration in non-subscriber cases. Appellees cite no authorities which construe section 410.104(a) in such a manner, and we decline the opportunity to create such authority by adopting appellees' interpretation of section 410.104(a).

In support of their contention that the McCarran-Ferguson Act precludes application of the FAA, appellees rely upon *In re Kepka*. 178 S.W.3d at 285. In *Kepka*, a claimant brought suit against a nursing home for negligence. *Id.* The nursing home moved to

compel arbitration based on a written agreement. *Id.* at 283-86. The claimant contended that the arbitration agreement failed to comply with the health care liability statute then in effect. *Id.* at 287-88. Under that statute, an arbitration agreement was required to be written in ten point boldface type, clearly and conspicuously informing the patient that he should consult with an attorney prior to signing the agreement because he was waiving his legal rights. *Id.* The nursing home alleged that the FAA preempted application of the health care statute, and the claimant, in turn, argued that the FAA was reverse preempted under the McCarran-Ferguson Act. *Id.* Our sister court held that the McCarran-Ferguson Act prevented the FAA from preempting the applicable requirements for an arbitration agreement under the health care law. *Id.* at 292.

The facts of the instant case, however, are more analogous to those found in *In re Autotainment Partners Limited Partnership*. 183 S.W.3d 532. In that case, an injured employee brought suit against his former employer, a non-subscriber under the workers compensation act, for injuries sustained on the job. *Id.* at 534. In *Autotainment*, the court rejected *Kepka*'s application to the statutes at issue:

> Under the circumstances in *Kepka*, the notice requirements contained in the state statute were not required in the FAA, and it was evident that application of the FAA interfered with the requirements of the state statute. . . . This is not the case here.
>
> [The real party in interest's] reverse preemption argument depends upon a state law that is preempted by the FAA. The FAA preempts a state law only when that state law is inconsistent with the FAA's policy favoring arbitration. Even were we to hold that [the real party in interest's] claim is governed by the Workers' Compensation Act, which we do not, he has not shown that any provision in the Act that might be applicable to his claim is inconsistent with the FAA. Thus, there is no state law preempted by the FAA and there can be no reverse preemption by the [Act].

*Id.* at 538 (internal citations omitted).

Assuming, without deciding, that the Texas Workers Compensation Act was enacted

13

for the purpose of regulating insurance, an issue we need not address, appellees have failed to show that any provision of that act would be impaired or invalidated by the FAA. Accordingly, based on the foregoing arguments, analysis, and authority, we conclude that the McCarran-Ferguson Act does not preclude application of the Federal Arbitration Act to this case.

## V. THE TEXAS WORKERS COMPENSATION ACT

Appellees next contend that the non-waiver provision of the Texas Workers Compensation Act defeats the arbitration provision. *See* TEX. LAB. CODE ANN. § 406.033. As we have previously discussed, however, section 406.033(e) does not render an arbitration agreement void. *In re Odyssey Healthcare, Inc.*, 310 S.W.3d at ___; *In re Golden Peanut Co., LLC*, 298 S.W.3d at 631; *see In re Border Steel, Inc.*, 229 S.W.3d 825, 832 (Tex. App.–El Paso 2007, no pet.) ("Therefore, the FAA preempts the application of the Texas non-waiver provision to prevent the enforcement of the Arbitration Agreement at issue here."). Accordingly, we reject this defense to the arbitration agreement.

## VI. UNCONSCIONABILITY

Appellees contend that the arbitration agreement is unconscionable. While arbitration agreements are not inherently unconscionable, an unconscionable arbitration agreement will be unenforceable under Texas law. *See In re Poly-America, L.P.*, 262 S.W.3d 337, 348-49 (Tex. 2008) (orig. proceeding); *In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 677-78; *In re Weeks Marine, Inc.*, 242 S.W.3d 849, 860-61 (Tex. App.–Houston [14th Dist.] 2007, orig. proceeding); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 171.022 (Vernon 2005) (providing that a court may not enforce an arbitration agreement "if the court finds the agreement was unconscionable at the time the agreement was made").

Unconscionability may be either procedural or substantive in nature. *In re Palm*

*Harbor Homes, Inc.*, 195 S.W.3d at 678. Generally speaking, procedural unconscionability refers to the circumstances surrounding the adoption of the arbitration provision, and substantive unconscionability concerns the fairness of the arbitration provision itself. *Id.*; *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002) (orig. proceeding). More specifically, procedural unconscionability relates to the making or inducement of the contract, focusing on the facts surrounding the bargaining process. *TMI, Inc. v. Brooks*, 225 S.W.3d 783, 792 (Tex. App.–Houston [14th Dist.] 2007, pet denied). Substantive unconscionability refers to whether the arbitration provision ensures preservation of the substantive rights and remedies of a litigant. *In re Odyssey Healthcare, Inc.*, 310 S.W.3d at ___; *In re Halliburton Co.*, 80 S.W.3d at 572. The test for substantive unconscionability is whether, "given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re FirstMerit Bank*, 52 S.W.3d at 757; *see In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 678.

The party asserting unconscionability bears the burden of proving either procedural and substantive unconscionability. *In re Turner Bros. Trucking Co.*, 8 S.W.3d 370, 376-77 (Tex. App.–Texarkana 1999, orig. proceeding). Whether a contract is contrary to public policy or unconscionable at the time it is formed is a question of law. *In re Poly-America, L.P.*, 262 S.W.3d at 348-49; *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 562 (Tex. 2006). Because a trial court has no discretion to determine what the law is or apply the law incorrectly, a clear failure to properly analyze or apply the law of unconscionability constitutes an abuse of discretion. *In re Poly-America, L.P.*, 262 S.W.3d at 349; *In re Green Tree Servicing LLC*, 275 S.W.3d 592, 602-603 (Tex. App.–Texarkana 2008, orig. proceeding).

Appellees contend that the arbitration agreement is unconscionable because: (1) a non-subscriber cannot require mandatory enrollment in an SPD, and thus arbitration, as a condition of employment; and (2) the notice provision in the SPD, which requires employees to report injuries by the end of the work shift, was unreasonable. Because both of these contentions relate to the SPD as a whole, and not to the arbitration provision specifically, we must reject these contentions as a basis to deny arbitration. *In re FirstMerit Bank*, 52 S.W.3d at 756 (defenses of unconscionability, duress, fraudulent inducement, and revocation must specifically relate to arbitration part of contract, not contract as whole, if they are to defeat arbitration; validity of arbitration provision is separate issue from that of whole contract).

The Texas Supreme Court has held under similar facts that such a "take it or leave it" offer from an employer to an at-will employee is not, without more, procedurally unconscionable. *See In re Halliburton Co.*, 80 S.W.3d at 572. Thus, the fact of non-negotiability alone will not render the arbitration agreement here unconscionable. *Id.*; *see In re Odyssey Healthcare, Inc.*, 310 S.W.3d at ___ ("Odyssey is a non-subscriber and, in lieu of workers' compensation insurance, it provided its workers with an 'Occupational Injury Benefit Plan.' [Real party in interest] enrolled in this plan as a condition of her employment."); *see also Omoruyi v. Grocers Supply Co.*, No. 14-09-00151-CV, 2010 Tex. App. LEXIS 3753, at *32-*33 (Tex. App.–Houston [14th Dist.] May 20, 2010, no pet.) (mem. op.).

In their briefing to this Court, appellees relied on *Rent-a-Center West v. Jackson*, 581 F.3d 912 (9th Cir. 2009), to support their assertion that mandatory employment agreements are per se unconscionable. However, this case was pending review by the United States Supreme Court at the time of briefing in this matter, and the supreme court

recently reversed the Ninth Circuit. *See Rent-A-Center W., Inc. v. Jackson*, NO. 09-497, 2010 U.S. LEXIS 4981, at *23 (U.S. June 21, 2010). The Supreme Court held:

> Under the FAA, where an agreement to arbitrate includes an agreement that the arbitrator will determine the enforceability of the agreement, if a party challenges specifically the enforceability of that particular agreement, the district court considers the challenge, but if a party challenges the enforceability of the agreement as a whole, the challenge is for the arbitrator.

*Id.* at *13-*14. We note that the arbitration agreement at issue contains similar language regarding the submission of "gateway" matters to the arbitrator, rather than to the courts.

Appellees further argue that the arbitration agreement is unconscionable because it requires employees to report their injuries by the end of the shift in which they are injured. However, as noted above, in considering an arbitration clause, unconscionability "must specifically relate to the [arbitration clause] itself, not the contract as a whole, if [unconscionability is] to defeat arbitration." *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 756; *see In re Odyssey Healthcare, Inc.*, 310 S.W.3d at ___. Because this allegation of unconscionablility does not specifically relate to the arbitration clause, we reject this defense. *See in re FirstMerit Bank, N.A.*, 52 S.W.3d at 756. In short, while we can envision a situation where mandatory enrollment in a health benefit plan offered by a non-subscriber could render an arbitration agreement unconscionable, we have not been presented with such a situation in this case.

## VII. Failure of Consideration

Appellees contend that the SPD gives Unit Texas "exclusive rights to terminate the arbitration agreement" and that there has been a failure of consideration as to any revisions of the Plan. The SPD and Plan provide, inter alia:

> The Company presently intends to continue this Plan indefinitely, but the Company reserves the right to amend, modify, or terminate this Plan at any time; provided, however, that no amendment or termination will alter the

17

arbitration provisions of this Plan with respect to, or reduce the amount of any benefit payable to or with respect to you under the Plan in connection with, an Injury occurring before the date of the amendment or termination. In addition, any amendment or termination of the arbitration provisions of this Plan shall not be effective until at least 14 days after written notice has been provided to you. Any amendment or termination will be done by formal written action of a representative authorized to act on behalf of the Company.

. . . .

The Company shall have the right and power at any time and from time to time to amend this Plan, in whole or in part, on behalf of all Employers, and at any time to terminate this Plan or any Employer's participation in this Plan; provided, however, that no amendment or termination shall alter the arbitration provisions . . . with respect to, or reduce the amount of any benefit payable to or with respect to a Covered Employee under the Plan in connection with, an Injury occurring before the date of the amendment or termination. In addition, any amendment or termination of the arbitration provisions . . . shall not be effective until at least 14 days after written notice has been provided to the Covered Employees. Any amendment or termination shall be done by formal written action of a representative authorized to act on behalf of the Company.

Appellees thus contend that Unit Texas has the unilateral ability to avoid arbitration; whereas, employees are bound to arbitrate.

An arbitration agreement may be illusory if a party can unilaterally avoid the agreement to arbitrate. *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 677; *In re HEB Grocery Co., L.P.*, 299 S.W.3d at 399; *see also D.R. Horton, Inc.*, 207 S.W.3d at 867 ("An illusory promise is one that fails to bind the promisor because he retains the option of discontinuing performance without notice."). Stated otherwise, a promise is illusory when it fails to bind the promisor, who retains the option of discontinuing performance. *See Light v. Centel Cellular Co.*, 883 S.W.2d 642, 645 (Tex. 1994); *In re HEB Grocery Co., L.P.*, 299 S.W.3d at 399.

Unit Texas's right to amend or terminate the Plan is qualified: any amendment or termination of the arbitration agreement is subject to fourteen days' notice to the employee

18

and is inapplicable to claims that have already been initiated. As such, the promise to arbitrate is not illusory, and the agreement to arbitrate is enforceable. *See In re Halliburton*, 80 S.W.3d at 569-70; *In re HEB Grocery Co., L.P.*, 299 S.W.3d at 399; *In re H. E. Butt Grocery Co.*, 17 S.W.3d at 370; *see also In re Kellogg Brown & Root*, 80 S.W.3d at 616 (holding that an agreement to arbitrate was not illusory when it could be amended or terminated by giving at least ten days' notice and such amendments would not apply to a dispute for which proceedings had been initiated); *Nabors Drilling USA, LP*, 198 S.W.3d at 248-49 (reaching the same result based on similar language).

## VIII. CONCLUSION

Having found an enforceable arbitration agreement applicable to the facts of this case, and having rejected appellees' defenses to enforcement of that agreement, we hold that the trial court erred in denying appellants' motion to compel arbitration. We reverse the order denying the motion to compel arbitration and remand this cause for further proceedings consistent with this opinion.

LINDA REYNA YAÑEZ,
Justice

Delivered and filed
29th day of July, 2010

19