IN THE SUPREME COURT OF TEXAS
 
════════════
No. 07-0783
════════════
 
Irving W. Marks, 
Petitioner,
 
v.
 
St. Luke’s Episcopal Hospital, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the First 
District of Texas
════════════════════════════════════════════════════
 
 
Argued September 11, 2008
 
 
            
Justice Johnson, joined by 
Justice Willett, and by Justice Hecht as to Parts II and III-A, 
and by Justice Wainwright as to 
Parts I, II, and III-A, concurring.
 
 
            
I fully join parts I and IV of the plurality’s opinion and the Court’s 
judgment. I agree with parts II and III of the opinion to the extent the 
plurality concludes Marks’s claim is a health care liability claim because it 
alleges violations of accepted standards of health care and accepted standards 
of safety. However, I believe that the plurality too narrowly construes the 
language “accepted standards of . . . safety.” I also believe that Marks’s suit 
should be dismissed for reasons in addition to, and in some instances different 
from, those given by the plurality.
            
First, Marks’s claim is based on a single incident and is substantively a 
health care liability claim in its entirety. This Court has consistently 
maintained that health care liability claims cannot be split into health care 
and non-health care claims by artful pleading. The claim for negligently 
assembling, maintaining, and providing the bed should be dismissed along with 
Marks’s other allegations that unquestionably assert health care liability 
claims.
            
Second, the claim for improper assembling, maintaining, and providing the 
bed is a claim for violating accepted standards of health care regardless of 
whether those actions also violated safety standards.
            
Third, the claim for improper assembling, maintaining, and providing the 
bed is a claim for violating accepted standards of safety regardless of whether 
the actions also violated accepted health care standards. The plurality reads 
the statute too narrowly and thus reduces the scope of actions covered by the 
term “safety” from that prescribed by the statute.
I. 
Background
            
Marks underwent surgery at St. Luke’s Hospital to implant a morphine pump 
into his spinal cord after multiple previous surgeries failed to alleviate his 
back problems. After surgery, the nursing staff made a notation in his medical 
records that he was at risk of falling because of his limited mobility, of his 
need for an ambulatory assistance device, the fact he was on morphine, and 
“Safety/Fall Precautions” were being implemented. The hospital’s Safety/Fall 
Precautions included provisions that there should be “no environmental hazards” 
in Marks’s room, his hospital bed was to be “in a low position with the brakes 
applied,” and the “side rails and safety devices” should be used as indicated. 
Marks alleges that eight days after his surgery and while still an inpatient, he 
and the footboard on his hospital bed fell when he placed his hand on the 
footboard and attempted to push himself from the bed to a standing 
position.
            
Marks sued St. Luke’s. He alleged the hospital was negligent in the 
following respects: (1) failing to properly train and supervise hospital 
employees in how to prevent falls and injuries; (2) failing to provide Marks 
with the assistance he required for daily living activities; (3) failing to 
provide him with a safe environment in which to receive treatment and recover; 
and (4) providing him with a hospital bed that had been negligently assembled 
and maintained by the hospital’s employees or nursing staff.
            
Marks failed to timely file an expert report and the trial court 
dismissed his suit. The court of appeals affirmed. 299 S.W.3d 
396. One justice dissented on the basis that the claim for negligently 
assembling, maintaining, and providing the bed was not a health care liability 
claim. Id. at 403 (Jennings, J., dissenting in 
part).
II. Artful 
Pleading
            
This Court, as did the trial court and the court of appeals, concludes 
that Marks’s first three allegations of negligence are health care liability 
claims under the Medical Liability and Insurance Improvement Act (MLIIA). 
See former Tex. Rev. Civ. Stat. 
art. 4590i § 1.03(a)(4).[1] That conclusion requires dismissal of 
Marks’s suit entirely because the fourth allegation—that the bed was negligently 
assembled, maintained, and provided—is based on the same facts and the same 
damages as the first three. The Court has previously held that when a cause of 
action is essentially a health care liability claim and a timely expert report 
has not been served, the claim should be dismissed in its entirety regardless of 
how the claim is pled. That should occur here.
            
In Diversicare General Partner, Inc. 
v. Rubio the concurring and dissenting justices concluded that the victim of 
a sexual assault at a nursing home asserted a premises liability claim against 
the nursing home independent of her health care liability claim. 185 S.W.3d 842, 857-58 (Tex. 2005) (Jefferson, C.J., concurring in 
part and dissenting in part); id. at 
861-66 (O’Neill, J., dissenting). The Court rejected that view because it “would 
open the door to splicing health care liability claims into a multitude of other 
causes of action with standards of care, damages, and procedures contrary to the 
Legislature’s explicit requirements. It is well settled that such artful 
pleading and recasting of claims is not permitted.” Id. at 854; see 
also Murphy v. Russell, 167 S.W.3d 835, 838 (Tex. 2005) (“[A] claimant 
cannot escape the Legislature’s statutory scheme by artful pleading.”); 
Garland Cmty. Hosp. v. Rose, 156 S.W.3d 541, 
543 (Tex. 2004) (“Plaintiffs cannot use artful pleading to avoid the MLIIA’s 
requirements when the essence of the suit is a health care liability claim.”). I 
would adhere to the Court’s holding and reaffirm the language the Court used in 
Diversicare and other cases rejecting 
claim-splitting by pleadings. Otherwise, the door will be opened to manipulated, 
inventive, and artful pleadings designed to avoid the MLIIA requirements and 
limitations.
            
By failing to address the claim-splitting aspect of this situation, the 
plurality’s opinion may create uncertainty in the bench and bar as to whether 
claim-splitting is permissible. And such uncertainty almost assuredly will lead 
to more extended and expensive trial and appellate court proceedings to 
determine whether a patient’s pleadings assert health care liability claims, 
non-health care liability claims, or both; and if both, which is which. Extended 
proceedings and associated increased costs, including economic settlements to 
avoid litigation expense, are a significant part of what the Legislature 
intended to avoid through enactment of the MLIIA. See Tex. Rev. Civ. Stat. art. 4590i, § 1.02(b)(2);[2] see also id. § 1.02(b)(1).
            
The Court should make clear it is not abandoning its position that when 
the substance of a patient’s claim for damages comes within the statutory 
definition of a health care liability claim, then the MLIIA applies to all the 
plaintiff’s claims against the health care provider based on that injury. Here, 
no matter how Marks pleaded his case, the substantive facts are that his injury 
arises from a health care liability claim and he should not be allowed to avoid 
application of the MLIIA by finding another way to plead his claim for 
damages.
III. Health 
Care and Safety
            
The hospital bed furnished to Marks was an integral and inseparable part 
of the health care he received from St. Luke’s. St. Luke’s asserts that Marks’s 
suit implicates accepted standards of both health care and safety as referenced 
by the MLIIA. I agree.
            
In determining whether the MLIIA encompasses Marks’s claims, we use 
well-established statutory construction rules. Courts should ascertain and give 
effect to the Legislature’s intent as expressed by the language of the statute. 
E.g., Entergy Gulf States, Inc. v. Summers, 282 S.W.3d 433, 437 
(Tex. 2009); State v. Shumake, 199 S.W.3d 279, 
284 (Tex. 2006) (“[W]hen possible, we discern [legislative intent] from the 
plain meaning of the words chosen.”). The prime principle is “the words [the 
Legislature] chooses should be the surest guide to legislative intent.” See 
Fitzgerald v. Advanced Spine Fixation Sys., Inc., 
996 S.W.2d 864, 866 (Tex. 1999). Only when those words are ambiguous do we 
“resort to rules of construction or extrinsic aids.” In re 
Estate of Nash, 220 S.W.3d 914, 917 (Tex. 2007). We use definitions 
prescribed by the Legislature and any technical or particular meaning the words 
have acquired, but otherwise we construe the statute’s words according to their 
plain and common meaning unless a contrary intention is apparent from the 
context or unless such a construction leads to nonsensical or absurd results. 
FKM P’ship, Ltd. v. Bd. of Regents of Univ. of 
Houston Sys., 255 S.W.3d 619, 633 (Tex. 2008); see also Fleming Foods of 
Tex., Inc. v. Rylander, 6 S.W.3d 278, 284 (Tex. 
1999).
A. Health 
Care
            
The MLIIA defines a health care liability claim as:
 
a cause of action against a health care provider or 
physician for treatment, lack of treatment, or other claimed departure from 
accepted standards of medical care or health care or safety which proximately 
results in injury to or death of the patient, whether the patient’s claims or 
cause of action sounds in tort or contract.
 
Tex. Rev. Civ. Stat. 
art. 
4590i, § 1.03(a)(4). As the plurality notes, a cause of 
action is a health care liability claim if it (1) is against a health care 
provider or physician; (2) for treatment, lack of treatment, or other claimed 
departure from accepted standards of medical care or health care or safety; and 
(3) the alleged departure from accepted standards proximately results in injury 
to or death of the patient. The Act broadly defines “health care” 
as:
 
any act . . . which should have been performed or 
furnished, by any health care provider for, to, or on behalf of a patient during 
the patient’s medical care, treatment, or confinement.
 
Tex. Rev. Civ. Stat. 
art. 
4590i, § 1.03(a)(2) (emphasis added); see Diversicare, 185 S.W.3d at 847 (describing health care 
as “broadly defined” under the MLIIA). Applying this broad definition, the Court 
has previously concluded that “[a] cause of action alleges a departure from 
accepted standards of . . . health care if the act or omission complained of is 
an inseparable part of the rendition of health care services.” Diversicare, 185 S.W.3d at 848; see Walden v. 
Jeffery, 907 S.W.2d 446, 448 (Tex. 1995). In this case, no one disputes that 
Marks’s hospital confinement while recovering from the latest of several back 
surgeries was medically necessary. If his condition made hospitalization 
medically necessary, then it logically follows that the hospital had to provide 
him with a hospital bed. And, if a hospital bed was necessary for Marks’s care 
and recuperation, it follows that the bed was an integral and inseparable part 
of his care and treatment. See Diversicare, 
185 S.W.3d at 849-54.
            
Marks focuses on the assembling and maintaining of the bed, as opposed to 
its use in patient care. He argues that his claim for negligent assembly and 
maintenance is not a health care liability claim because it is based on the 
breach of an ordinary standard of care, not on a discrete standard of care 
applicable to the health care industry. His position, as to the bed claim, is 
that St. Luke’s owed him the general duty of care owed by businesses to their 
invitees.[3]
            
Although health care providers and patients may well be premises owners 
or occupiers and invitees, the Legislature has imposed requirements on suits by 
patients against health care providers that differ from general requirements for 
suits by invitees against premises owners or occupiers. See Tex. Rev. Civ. Stat. art. 4590i, § 1.03(a)(3); Diversicare, 185 
S.W.3d at 850 (“The obligation of a health care facility to its patients is not 
the same as the general duty a premises owner owes to invitees.”). If Marks had 
been a guest in a hotel when his bed fell, his fall could well have given rise 
to a premises liability claim. But he was not a hotel guest; he was a patient 
receiving health care in a hospital. There is a difference because of the MLIIA. 
Diversicare, 185 S.W.3d at 850 (“There is an 
important distinction in the relationship between premises owners and invitees 
on one hand and health care facilities and their patients on the other. The 
latter involves health care.”).
            
Marks’s own expert reports affirm that the hospital’s provision of the 
hospital bed was an integral and inseparable part of actions that were 
“furnished, or which should have been performed or furnished, by [St. Luke’s] 
for, to, or on behalf of [Marks] during [Marks’s] medical care, treatment, or 
confinement.” See Tex. Rev. Civ. Stat. 
art. 4590i, § 1.03(a)(2). Although 
the reports were served too late to save his health care claims from dismissal, 
they demonstrate what Marks contends is the proper standard of care. Dr. Jeffrey 
D. Reuben opined:
 
The accepted standard of care for nursing and hospital 
practice is to provide the patient with reasonably safe medical equipment, 
including a hospital bed for in-patients, to receive and recover from medical 
treatment. The accepted standard of good care for nursing and hospital practice 
is to evaluate each patient to determine if he/she is a risk to fall. . . . If a 
. . . patient may be a risk to fall, the accepted standard of good care for 
nursing and hospital practice is to implement interventions to eliminate and 
reduce the patient’s risk of falling. . . .
 
. . . [St. Luke’s] knows that patients would use the 
footboard on a hospital bed as support to get out of bed. It is for this reason 
that the hospital footboard should be firmly secured to the hospital bed. [St. 
Luke’s] staff violated the accepted standard of care by failing to provide 
[Marks] with a [footboard] that was properly secured to the hospital bed. . . . 
Given [St. Luke’s] staff’s knowledge that [Marks] was a risk to fall, that he 
was on morphine, and that its patients use the footboard as support to get out 
of the hospital bed, [St. Luke’s] nursing staff should have provided [Marks] 
with a footboard that was properly secured to the hospital bed, and as part of 
its ongoing duty to assess and identify potential fall hazards, should have 
identified and properly secured the footboard to the hospital 
bed.
 
Nurse practitioner Jan Zdanuk’s opinion was similar:
 
Hospitals have a duty to provide a safe environment of 
care for all patients. This includes equipment such as hospital beds that must 
be maintained in safe operating condition at all times. It is a breach in the 
standard of care for a footboard to fall off a bed when a patient leans on it 
while attempting to get up resulting in a fall with serious 
injuries.
 
The Legislature has prescribed, and 
the expert reports filed in this case recognize, that disputes such as the one 
before us involve standards of care owed by hospitals to patients.
            
To the extent the plurality says or implies that a claim for a departure 
from accepted health care standards depends on allegations concerning acts or 
omissions of hospital workers with specialized health care training—as opposed 
to hospital workers without specialized training who are nevertheless necessary 
for a hospital to properly care for patients—I disagree. Marks’s Original 
Petition states the hospital bed was negligently assembled by St. Luke’s 
“employees, agents, servants or nursing staff.” The MLIIA does not limit “health 
care” to those actions taken by nurses or doctors. Rather, the legislative 
definition of health care includes “any act” which was or should have been 
performed or furnished “by any health care provider for, to, or on behalf of a 
patient during the patient’s medical care, treatment, or confinement.” Tex. Rev. Civ. Stat. art. 4590i, § 1.03(a)(2). The Act defines “health care provider” 
as
 
any person, partnership, professional association, 
corporation, facility, or institution duly licensed or chartered by the State of 
Texas to provide health care as a registered nurse, hospital, dentist, 
podiatrist, pharmacist, or nursing home, or an officer, employee, or agent 
thereof acting in the course and scope of his 
employment.
 
Id. § 1.03(a)(3) (emphasis added). The definition plainly includes, 
without qualification, employees of health care providers so long as they are 
acting in the course and scope of their employment.
            
There is no need to dissect and inquire into or distinguish between 
categories of health-care-provider employees based on duties, types of actions 
performed, and the type of judgment exercised. The literal and plain statutory 
language includes all officers, employees, or agents of the provider acting in 
the course and scope of their employment. Id. Giving the language its 
literal meaning does not yield absurd or nonsensical results. See, e.g., 
In re Jorden, 249 S.W.3d 416, 423 n.32 (Tex. 
2008) (“There are instances where the literal meaning of a statute may be 
disregarded. But it is only where it is perfectly plain that the literal sense 
works an absurdity or manifest injustice.” (quoting Gilmore v. Waples, 188 S.W. 1037, 1039 (Tex. 1916))). Marks’s claim 
as to the hospital bed is a claim that the hospital violated accepted standards 
of health care.
B. 
Safety
            
I agree with parts II and III of the plurality’s opinion to the extent 
those parts conclude that providing a reasonably safe hospital bed to Marks 
involved accepted standards of safety. However, I believe the plurality 
construes the “accepted . . . standards of safety” language too 
narrowly.
            
The MLIIA defines a health care liability claim to include “a cause of 
action against a health care provider or physician for . . . [a] claimed 
departure from accepted standards of . . . safety which proximately results in 
injury to or death of the patient.” Tex. 
Rev. Civ. Stat. 
art. 4590i, § 1.03(a)(4). The 
plurality says that under the statute
 
standards of safety must be construed in light of the other 
standards of medical and health care, standards that are directly related to the 
patient’s care and treatment. . . . [A]n accepted standard of 
safety is implicated under the MLIIA when the unsafe condition or thing, causing 
injury to the patient, is an inseparable or integral part of the patient’s care 
or treatment.
 
___ S.W.3d at 
___. The statute 
does not so limit its provision as to safety standards. The plurality’s 
construction constricts the application of the statute by effectively adding 
language to it.
            
Although the MLIIA does not define “safety,” the statute specifies that 
legal terms or words of art used but not otherwise defined in the statute “shall 
have such meaning as is consistent with the common law.” Tex. Rev. Civ. Stat. art. 4590i, 
§ 1.03(b). Thus, in interpreting the MLIIA, the Court has previously 
construed “safety” according to its common law definition as the condition of 
being “untouched by danger; not exposed to danger; secure from danger, harm or 
loss.” Diversicare, 185 S.W.3d at 855 (quoting 
Black’s Law Dictionary 1336 (6th 
ed. 1990)).
            
The Court’s prior broad construction of the safety standard is consistent 
with the plain language of the statute, does not offend the purpose of the 
statute, is not inconsistent with its contextual meaning, and does not yield an 
absurd or nonsensical result. See id. at 847 
(describing health care as “broadly defined” under the MLIIA). I agree with 
Chief Justice Jefferson’s choice of words in Diversicare:
 
Because the statute does not define “safety,” we must 
assign its common meaning . . . [of] protection from 
danger. . . . The specific source of that danger, be it 
a structural defect, criminal assault, or careless act, is without limitation. 
While it may be logical to read into the statute a requirement that a safety 
related claim also involve health care, there is nothing 
implicit in safety’s plain meaning nor explicit 
in the MLIIA’s language that allows us to impose such a 
restriction.
 
See id. at 860-61 
(Jefferson, C.J., concurring in part, and dissenting in part) (citations 
omitted). Statements the plurality makes today depart from the Court’s prior 
reading of the statute, and I would not do so. The MLIIA reflects legislative 
intent to broadly, not narrowly, cover claims made by patients against their 
health care providers. If policy considerations support limiting or excluding 
subcategories of claims when the unambiguous statutory language includes the 
overall category, as it does here, then incorporating those exclusions into the 
statute is a Legislative prerogative, not a judicial one. See Tex. Const. art. II, § 
1; Lee v. City of Houston, 807 S.W.2d 290, 294-95 (Tex. 1991) (“A court 
may not judicially amend a statute and add words that are not implicitly 
contained in the language of the statute.”); Smith v. Davis, 426 S.W.2d 
827, 831 (Tex. 1968).
            
If a health care provider furnishes unsafe materials or creates an unsafe 
condition as an integral and inseparable part of a patient’s health care or 
treatment, the health care provider’s acts or omissions would already fall 
within the category of claims based on departures from accepted standards of 
health care and there would be no need for the Act to include the word “safety.” 
See Diversicare, 185 S.W.3d at 848 (“A cause of 
action alleges a departure from accepted standards of medical care or health 
care if the act or omission complained of is an inseparable part of the 
rendition of medical services.”). Applying the plurality’s “inseparable or 
integral part of the patient’s care or treatment” standard to “safety” 
effectively reads safety out of the statute instead of properly giving it 
meaning as an additional category of claims. See id. at 855 (“Certainly, 
the Legislature’s inclusion within the scope of the MLIIA of claims based on 
breaches of accepted standards of ‘safety’ expands the scope of the statute 
beyond what it would be if it only covered medical and health care.”). This 
Court has consistently construed statutes based on the presumption that the 
Legislature intended an entire statute to be effective, so we “try to give 
effect to all the words of a statute, treating none of its language as surplusage when reasonably possible.” Phillips v. Bramlett, 288 S.W.3d 
876, 880 (Tex. 2009); e.g., Tex. Gov’t Code § 311.021(2); Sultan v. 
Mathew, 178 S.W.3d 747, 751 (Tex. 2005) (“We must avoid, when possible, 
treating statutory language as surplusage.”); City 
of La Porte v. Barfield, 898 S.W.2d 288, 292 (Tex. 1995) (“We will not read 
statutory language to be pointless if it is reasonably susceptible of another 
construction.”); Perkins v. State, 367 S.W.2d 140, 146 (Tex. 1963) 
(“[E]ach sentence, clause and word is to be given effect if reasonable and 
possible.”). Accordingly, the Court should construe the Legislature’s inclusion 
of “safety” claims in the MLIIA as expanding the scope of health care liability 
claims beyond what it would be if the statute only covered medical and health 
care claims, not confining those claims to be the same as claims already coming 
within the statute’s coverage as health care claims. Diversicare, 185 S.W.3d at 
855.
IV. 
Conclusion
            
I agree that Marks’s suit should be dismissed in its entirety. However, I 
would hold that the entire suit, including the allegations concerning the 
hospital bed, falls within the MLIIA and is barred for three reasons: (1) the 
suit is substantively a health care liability claim and part of it cannot be 
recast into a non-health care claim; (2) the claims are for departures from 
accepted standards of health care; and (3) the claims are for departures from 
accepted standards of safety.
 
                                                                        
________________________________________
                                                                        
Phil Johnson
                                                                        
Justice
 
OPINION DELIVERED: August 27, 2010






[1] Medical 
Liability and Insurance Improvement Act of Texas, 65th Leg., R.S., ch. 817, § 1.03, 1977 Tex. Gen. Laws 2039, 2041, repealed 
by Act of June 2, 2003, 78th Leg., R.S., ch. 204, 
§ 10.09, 2003 Tex. Gen. Laws 847, 884. While this case was pending, the 
Legislature repealed the MLIIA, amended parts of the previous article 4590i, and 
re-codified it in 2003 as chapter 74 of the Texas Civil Practice and Remedies 
Code. Because article 4590i continues to govern this case, citations are to the 
former article rather than the Civil Practice and Remedies Code.

[2] Medical 
Liability and Insurance Improvement Act of Texas, 65th Leg., R.S., ch. 817, § 1.02, 1977 Tex. Gen. Laws 2039, 2040, repealed 
by Act of June 2, 2003, 78th Leg., R.S., ch. 204, 
§ 10.09, 2003 Tex. Gen. Laws 847, 884.

[3] As the 
Court did in Diversicare, I “note the irony” of 
this position. Diversicare, 185 S.W.3d at 853. Marks asserts 
that the MLIIA should not apply to his claim because the claim is a premises 
liability claim based on ordinary negligence. But his position, if adopted, 
would have the effect of lowering the standard of care owed by health care 
providers to patients in health care facilities. See id. at 853-54.