In re PEOPLE'S CHOICE
HOME LOAN, INC.

No. 08–04–00372–CV.

Court of Appeals of Texas,
El Paso.

Aug. 23, 2005.

See also, 225 S.W.3d 34.

Andrea H. Vogelsang, McGlinchey Stafford, PLLC, Houston, Gregg D. Stevens, McGlinchey Stafford, PLLC, Dallas, for Relator.

Mark T. Davis, Dee J. Kelly Jr., Kelly, Hart & Hallman, P.C., Fort Worth, Jose E. Troche, Attorney at Law, El Paso, for Real Parties in Interest.

Before BARAJAS, C.J., McCLURE, and CHEW, JJ.

### OPINION ON PETITION FOR WRIT OF MANDAMUS

DAVID WELLINGTON CHEW, Justice.

In this original proceeding, Relator People's Choice Home Loan, Inc. ("People's Choice") seeks mandamus relief from an order denying its motion to abate and compel arbitration. We conditionally grant mandamus relief.

### BACKGROUND

In December 2002, Maricela Jimenez decided to apply for a home equity loan on her El Paso residence. Mrs. Jimenez met with Octavio Realzola, a mortgage broker doing business under the assumed name of Amiracle Mortgage Group. Mr. Realzola arranged for a home equity loan through People's Choice. After the closing, Mrs. Jimenez realized that she had been overcharged in fees and other costs. People's Choice later sold the loan to GMAC Mortgage Corporation ("GMAC").

In March 2004, Mrs. Jimenez notified both People's Choice and GMAC that she was overcharged for the loan, but neither responded to her inquiry, conducted any investigation, or made any contact with her. On June 17, 2004, real parties in interest, Mrs. Jimenez and her husband Mr. Enrique Jimenez ("the Jimenezes"), filed suit against Octavio Realzola d/b/a Amiracle Mortgage Group, People's Choice, and GMAC, seeking declaratory relief in connection with the loan fees, cancellation of the loan, and the return of all sums of money paid to the defendants.

On August 19, 2004, People's Choice filed its original answer and asserted as an affirmative defense that the contract between People's Choice and the plaintiffs was governed by an arbitration agreement. On September 20, 2004, People's Choice filed a motion to abate and compel arbitration. In the motion, People's Choice asserted that the Jimenezes had signed a valid and enforceable arbitration agreement. People's Choice also alleged that the other defendants, Mr. Realzola and GMAC, were not opposed to its request for mandatory arbitration. The arbitration agreement was attached to the motion, along with an affidavit from the vice president of People's Choice as the attesting custodian of the business record.

On November 2, 2004, the Jimenezes filed a response to the motion, arguing that the arbitration agreement was not enforceable because: (1) it was procedurally and substantively unconscionable; (2) it lacked consideration because Mr. Jimenez did not apply for or receive a loan; (3)

People's Choice waived its right to arbitrate by failing to make a timely demand for arbitration; and (4) People's Choice was not the real party in interest because the loan made the subject of the lawsuit was currently held by GMAC and the plaintiffs were seeking forfeiture of the principal, which was not owned by People's Choice.

On November 12, 2004, the trial court conducted a hearing on the motion to compel arbitration. At the hearing, counsel for the Jimenezes argued that the arbitration agreement was substantively unconscionable because under the parties' agreement, the exceptions to arbitrable disputes were all causes of actions that a lender, not a borrower would bring. The Jimenezes' counsel also argued that having to go to Dallas to arbitrate would be "significantly more expensive" for him and his clients. With regard to substantive unconscionability, the Jimenezes' counsel asserted that the other defendants would not be subject to arbitration and therefore, the cause would still remain in the trial court. The Jimenezes' counsel also argued that the demand for arbitration was not within the sixty days required under the agreement, and that with respect to Mr. Jimenez, there was a lack of consideration because he did not receive nor request any loan in the transaction. No witnesses testified at the hearing and no evidence was otherwise admitted. At the conclusion of the hearing, the trial court denied the motion to compel arbitration. People's Choice now brings this original proceeding in mandamus.[1]

---

1. People's Choice also filed an accelerated interlocutory appeal of the trial court's denial of its motion to compel arbitration in the event we determine that the arbitration agreement is governed by the Texas General Arbitration Act rather than the Federal Arbitration Act. *See* Tex.Civ.Prac. & Rem.Code Ann. §§ 171.001–.098 (Vernon 2005); 9 U.S.C.A. §§ 1–16 (1999 & Supp.2005); *see also In re Valero Energy Corp.*, 968 S.W.2d 916, 916–17 (Tex.1998) (orig. proceeding). That appeal has been consolidated with this mandamus proceeding and has been decided with an

## DISCUSSION

## INTERLOCUTORY APPEAL OR MANDAMUS

People's Choice asserts that the arbitration agreement executed by the Jimenezes is governed by the Federal Arbitration Act ("FAA") because the loan transaction involves interstate commerce and the agreement expressly provides that arbitration will be conducted by the American Arbitration Association and be governed by the FAA. In its motion to compel arbitration, People's Choice stated that the arbitration agreement specifically provided that it was governed by the FAA, but it argued that the agreement was enforceable under either the FAA or the Texas General Arbitration Act ("TGAA"). The trial court, however, did not specify in its order whether the FAA or the TGAA governed the arbitration agreement at issue. Out of an abundance of caution, People's Choice has filed both an interlocutory appeal and a petition for writ of mandamus. *See Russ Berrie & Co., Inc. v. Gantt*, 998 S.W.2d 713, 714–15 (Tex.App.-El Paso 1999, no pet.)(a party seeking enforcement of arbitration under the FAA must pursue mandamus relief, whereas a party seeking enforcement under the TGAA may seek relief through an interlocutory appeal). Therefore, we first consider whether the FAA or the TGAA applies to the arbitration agreement in question.

■ The FAA applies to all suits in state or federal court when the dispute concerns a "contract evidencing a transaction involving commerce." *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 269–70 (Tex.1992)(orig. proceeding). "Commerce" is broadly defined and encompasses contracts relating to interstate commerce. *In re Gardner Zemke Co.*, 978 S.W.2d 624, 626 (Tex.App.-El Paso 1998, orig. proceed-

ing). The FAA does not require a substantial effect on interstate commerce; rather, it requires only that commerce be involved or affected. *In re L & L Kempwood Assocs., L.P.*, 9 S.W.3d 125, 127 (Tex. 1999)(orig. proceeding)(per curiam). When there is no express agreement to arbitrate under the FAA, a party may establish the applicability of the FAA by showing that the transaction affects or involves interstate commerce. *See Stewart Title Guar. Co. v. Mack*, 945 S.W.2d 330, 333 (Tex.App.-Houston [1st Dist.] 1997, writ dism'd w.o.j.). Interstate commerce may be shown in several ways, including: (1) location of headquarters in another state; (2) transportation of materials across state lines; (3) manufacture of parts in a different state; (4) billings prepared out of state; and (5) interstate mail and phone calls in support of a contract. *See Mack*, 945 S.W.2d at 333; *Tipps*, 842 S.W.2d at 270.

■ In this case, the arbitration agreement expressly states:

Each arbitration, including the selecting of the arbitrator, will be administered by the American Arbitration Association (the 'AAA') pursuant to its Commercial Arbitration Rules. Each arbitration will be governed by the Federal Arbitration Act (Title 9 of the United States Code).

Thus, the contract contains an express agreement to arbitrate under the FAA. *See In re Kellogg Brown & Root*, 80 S.W.3d 611, 617 (Tex.App.-Houston [1st Dist.] 2002, orig. proceeding) (when parties agree to arbitrate under the FAA, they are not required to establish that the transaction at issue involves or affects interstate commerce); *but see Russ Berrie & Co.*, 998 S.W.2d at 715 (for purposes of subject matter jurisdiction, jurisdiction cannot be

opinion issued this same date. *See People's Choice Home Loan, Inc. v. Maricela Jimenez and Enrique Jimenez*, 225 S.W.3d 34 (Tex.App.-El Paso 2005, no pet. h.).

conferred by the parties' agreement). We also find, however, there was evidence in the record to show that the loan transaction involved interstate commerce, namely: the Jimenezes are Texas residents; Mrs. Jimenez contracted for a home equity loan with People's Choice, a Wyoming corporation; and People's Choice obtained a security interest lien on the Jimenezes' home in El Paso, Texas. The parties' contract clearly involved interstate commerce and the arbitration agreement expressly adopted the FAA, therefore, we conclude the FAA applies.

## DENIAL OF MOTION TO COMPEL ARBITRATION

### *Standard of Review*

■■■ A writ of mandamus will issue if the trial court has clearly abused its discretion and there is no other adequate remedy of law. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992)(orig. proceeding). With respect to resolution of factual issues or matters within the trial court's discretion, the reviewing court may not substitute its judgment for that of the trial court. *Walker*, 827 S.W.2d at 839–40. The relator must show that the trial court could reasonably have reached only one decision. *Id.* The reviewing court cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id.* With respect to the trial court's decision of legal issues, our review is much less deferential. *Id.* at 840. A trial court has no discretion in determining what the law is or applying the law to the facts. *Id.* Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id.* When a trial court erroneously denies a motion to arbitrate under the FAA, mandamus is the appropriate remedy. *In re Halliburton Co.*, 80 S.W.3d 566, 573 (Tex. 2002)(orig. proceeding), *cert. denied*, 537 U.S. 1112, 123 S.Ct. 901, 154 L.Ed.2d 785 (2003); *In re Bruce Terminix Co.*, 988 S.W.2d 702, 703–04 (Tex.1998)(orig. proceeding)(There is no adequate remedy by appeal for denial of the right to arbitrate).

### *Existence and Scope of Arbitration Agreement*

■■■ A party seeking to compel arbitration must establish the existence of an arbitration agreement and show that the claims raised fall within the scope of that agreement. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999)(orig. proceeding), *abrogated on other grounds by In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex.2002)(orig. proceeding). Once the party seeking to compel arbitration proves that a valid arbitration agreement exists, both state and federal policy favors arbitration and any doubts regarding the scope of the agreement are resolved in favor of arbitration. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex.2003); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex.2001)(orig. proceeding). If the party seeking arbitration carries its initial burden, the burden then shifts to the party resisting arbitration to present evidence on its defenses to the arbitration agreement. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d at 573.

■■■ Applying state contract principles, we first determine whether a valid agreement to arbitrate exists. *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 209 (Tex.App.-El Paso 2004, orig. proceeding); *see also Coker v. Coker*, 650 S.W.2d 391, 393–94 (Tex.1983)(primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument). In this case, as part of the loan transaction, the Jimenezes each signed the Agreement for the

Arbitration of Disputes. This arbitration agreement provides, in part:

If you [Maricela Jimenez and Enrique Jimenez] and we [People's Choice] are not able to resolve our differences informally, you and we agree that any dispute, regardless of when it arose, shall be settled, at your option or ours, by arbitration in accordance with this Agreement. Judgement on the arbitrator's award may be entered in any court having jurisdiction. This Agreement shall also apply to any dispute with our agents, successors or assigns.

This Agreement is made in consideration of our processing of your inquiry or application for a loan secured by the property identified above ('Loan') at the interest rate(s) that you have been or will be quoted. If your application is approved and the Loan is funded, this Agreement is also made in further consideration of our funding of the Loan at the interest rate(s) referenced in the Loan documents. This Agreement is effective and binding on both you and us when you sign below. *If you have any questions, you should consult you own lawyer before you sign this Agreement.*

**Dispute:** For purposes of this Agreement, a dispute is any claim or controversy of any nature whatsoever arising out of or in any way related to the Loan; the arranging of the Loan; any application, inquiry or attempt to obtain the Loan; any Loan documents; the servicing of the Loan; or any other aspect of the Loan transaction. It includes, but is not limited to, federal or state contract, tort, statutory, regulatory, common law and equitable claims. A dispute does not include those items described in the paragraph labeled 'Exceptions,' below.

. . .

**Exceptions:** The following are not disputes subject to this Agreement: (1) any judicial or non-judicial foreclosure proceeding against any real or personal property that serves as collateral for the loan, whether by the exercise of any power of sale under any deed of trust, mortgage, other security agreement or instrument or under applicable law, (2) the exercise of any self-help remedies (including repossession and setoff rights) and (3) provisional or ancillary remedies with respect to the loan or any collateral for the loan such as injunctive relief, sequestration, attachment, replevin or garnishment, the enforcement of any assignment of rents provision in any loan documents, the obtaining of possession of any real property collateral for the loan by an action for unlawful retainer or the appointment of a receiver by a court having jurisdiction. This means that nothing in this Agreement shall limit your right or our right to take any of these actions. The institution and/or maintenance of any action or remedy described in this paragraph shall not constitute a waiver of your right or our right to arbitrate any dispute subject to this Agreement.

. . .

**BY SIGNING BELOW YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTOOD THIS AGREEMENT AND THAT YOU AGREE TO ALL OF ITS TERMS. YOU ALSO ACKNOWLEDGE THAT YOU HAVE RECEIVED A COPY OF THIS AGREEMENT.**

**THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.** [Emphasis in original].

A plain reading of the parties' agreement establishes that the parties' did intend to submit disputes to arbitration. Further, Mrs. Jimenez and Mr. Jimenez each

signed the arbitration agreement. A party's signature on the written contract is "strong evidence" that the party unconditionally assented to the contract terms. *In re Bunzl USA, Inc.,* 155 S.W.3d at 209, *citing* 1 Arthur Linton Corbin, Corbin on Contracts § 2.10, at 168 (Joseph M. Perillo rev., 1993).

In their response to the motion to compel arbitration, the Jimenezes argued that the arbitration agreement was not enforceable because it lacked consideration. Specifically, the Jimenezes asserted that it was not supported by consideration because Mr. Jimenez did not apply for or receive a loan. There is no dispute that Mr. Jimenez did not apply for or obtain the loan, but did co-sign the arbitration agreement. Under Texas law, a non-signatory plaintiff may be compelled to arbitrate if its claims are "based on a contract" containing an agreement to arbitrate. *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 739 (Tex.2005); *In re FirstMerit Bank, N.A.,* 52 S.W.3d at 755. Mr. Jimenez brought suit based on the parties' contract and therefore subjected himself to the, 52 S.W.3d at 755. Mr. Jimenez brought suit based on the parties' contract and therefore subjected himself to the contract's terms, including the arbitration agreement. *See In re FirstMerit Bank,* 52 S.W.3d at 756. We conclude that People's Choice established the existence of an arbitration agreement between People's Choice and the Jimenezes.

We next consider whether the claims raised by the Jimenezes fall with the scope of the arbitration agreement. In their petition, the Jimenezes alleged People's Choice charged more than three percent of the amount of the loan for the origination, evaluation, maintenance, recording, insuring, and servicing of the extension of credit. They also alleged that People's Choice failed to sign the acknowl-edgment of fair market value on the property and committed fraudulent misrepresentation by charging interest above the ordinary rate while charging Mrs. Jimenez a fee to reduce the interest rate. We conclude that the allegations against People's Choice indeed fell within the scope of the arbitration agreement as they constituted claims arising out of or related to the servicing of the loan and/or other aspects of the loan transaction.

Relatedly, the Jimenezes asserted in their response to the motion that People's Choice, the party seeking arbitration, was not the real party in interest because the loan is currently held by GMAC. They argued that the relief sought in their lawsuit was forfeiture of the principal, which was not owned by People's Choice. However, in reviewing their original petition it is clear that they also sought a judgment against People's Choice based on their fraudulent conduct claim and the return of servicing fees specifically paid to People's Choice at the closing. Therefore, their contention is without merit and does not defeat the existence of an arbitration agreement or the fact that the claims they asserted fell within the scope of that agreement.

### *Defenses to Arbitration*

#### *Arbitration Not Timely Demanded*

The Jimenezes complained in their response that People's Choice had failed to timely demand arbitration after their notice of overcharge and service of their original petition and had therefore, waived its right to arbitration. We disagree.

The arbitration agreement provides:

Either you [Maricela Jimenez and Enrique Jimenez] or we [People's Choice] can request that a dispute be submitted to arbitration. Either you or we can do

this before a lawsuit (which is usually initiated by the filing of a 'complaint') has been served or within 60 days after a complaint, an answer, a counterclaim or an amendment to a complaint has been served.

Here, People's Choice filed its original answer on August 19, 2004. According to the agreement, either party can request arbitration within sixty days after a complaint, answer, a counterclaim, or an amendment to a complaint has been served. People's Choice filed its motion to abate and compel arbitration on September 20, 2004. The request for arbitration was well within the sixty-day period, therefore People's Choice made a demand for arbitration in a timely manner. Because public policy favors arbitration, there is a strong presumption against waiver of contractual arbitration rights. *See In re Bruce Terminix Co.*, 988 S.W.2d at 704. Further, courts will not find waiver if a party merely takes part in litigation unless it has substantially invoked the judicial process to its opponent's detriment. *In re Bruce Terminix Co.*, 988 S.W.2d 702. Whether a party's conduct waives its arbitration rights under the FAA is a question of law. *Id.* at 703–04. Since People's Choice timely requested its demand for arbitration and there was no evidence that the Jimenezes suffered any prejudice, we conclude that the Jimenezes failed to show People's Choice waived its contractual right to arbitration.

*Unconscionability*

In their response to the motion, the Jimenezes also argued that the arbitration agreement was unenforceable because it was procedurally and substantively unconscionable in that it was a one-sided adhesion contract obtained with unequal bargaining power, too costly, and provided that only the Jimenezes waived their rights to resolution of disputes in court, but under the same agreement People's

Choice waived no such rights. At the hearing, the Jimenezes specifically argued that the agreement was unconscionable because the exceptions to arbitrable disputes were all causes of action that a lender, not a borrower would bring, despite language in the agreement that each party had the right to take any of the actions listed in the exceptions provision. The Jimenezes' counsel also argued that having to go to Dallas to arbitrate would be "significantly more expensive" for him and his clients. In addition, their counsel asserted that taking witnesses to either Houston or Dallas would be prohibitively expensive for his clients. With regard to substantive unconscionability, the Jimenezes' counsel also asserted that the other defendants would not be subject to arbitration and therefore, the cause would still remain in the trial court.

Since People's Choice carried its initial burden, the burden then shifted to the Jimenezes to present evidence on its defense of unconscionability. *See In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d at 573. Unconscionability involves two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision; and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself. *In re Halliburton Co.*, 80 S.W.3d at 571. The burden of proving unconscionability rests on the party seeking to invalidate the arbitration agreement. *Id.; In re FirstMerit Bank, N.A.*, 52 S.W.3d at 756.

The Jimenezes claimed that the arbitration agreement was an adhesion contract that was unconscionable because it was one-sided and obtained with unequal bargaining power. An adhesion contract is a contract in which one party has absolutely no bargaining power or ability to

change the contract terms. *See In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 370–71 (Tex.App.-Houston [14th Dist.] 2000, orig. proceeding). No evidence was admitted to show the Jimenezes' lack of bargaining power or inability to change the contract terms. The agreement states, *"If you have any questions, you should consult you own lawyer before you sign this Agreement."* However, this statement does not indicate that the Jimenezes had equal bargaining power to change the terms of the arbitration agreement or even an opportunity to negotiate its terms. Even assuming that the agreement was an adhesion contract, an adhesion contract is not automatically unconscionable or void. *See In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d at 574; *see also EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90–1 (Tex.1996)(unequal bargaining power does not establish grounds for defeating an agreement to arbitrate under the FAA). Therefore, we will consider whether the Jimenezes presented some other evidence of unconscionability. *See In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d at 574.

 The Jimenezes argued that the agreement was procedurally unconscionable because it was too costly. At the hearing, their counsel stated that going to Dallas to arbitrate would be more expensive for his clients and that taking witnesses they needed to call to Houston or Dallas would also be prohibitively expensive. The Jimenezes introduced no witness testimony and no affidavits to support their argument regarding the prohibitive costs of arbitration in this case. Moreover, there is no evidence to show that the Jimenezes lacked the financial capability to pay the alleged expensive arbitration costs. Therefore, the Jimenezes claim that arbitration would be too costly was not supported by any evidence.

 The Jimenezes assert, however, that the trial court properly denied the motion to compel arbitration based on substantively unconscionability. The Jimenezes claim that under the terms of the arbitration agreement, all the claims or controversies that would or could arise in favor of People's Choice are claims that are exempted from arbitration, while all claims or controversies that would or could be brought by them as borrowers must be arbitrated. Specifically, the Jimenezes point to the following provision in the agreement:

> **Exceptions:** The following are not disputes subject to this Agreement: (1) any judicial or non-judicial foreclosure proceeding against any real or personal property that serves as collateral for the loan, whether by the exercise of any power of sale under any deed of trust, mortgage, other security agreement or instrument or under applicable law, (2) the exercise of any self-help remedies (including repossession and setoff rights) and (3) provisional or ancillary remedies with respect to the loan or any collateral for the loan such as injunctive relief, sequestration, attachment, replevin or garnishment, the enforcement of any assignment of rents provision in any loan documents, the obtaining of possession of any real property collateral for the loan by an action for unlawful retainer or the appointment of a receiver by a court having jurisdiction. This means that nothing in this Agreement shall limit your right or our right to take any of these actions. The institution and/or maintenance of any action or remedy described in this paragraph shall not constitute a waiver of your right or our right to arbitrate any dispute subject to this Agreement.

In essence, the Jimenezes are arguing that arbitration agreement is constructed in such a way that it is biased in favor of

People's Choice because the actions designated under the "Exceptions" provision and thus, exempted from arbitration, are in fact all creditor's remedies, not actions that a borrower could take against People's Choice. Thus, even though the agreement states that both the Jimenezes and People's Choice have a right to pursue the designated judicial remedies in the exceptions provision, in reality, only the Jimenezes' rights to resolve their disputes in court are waived under the agreement because they could never take advantage of the exceptions provision.

First, we observe that the "Dispute" provision, which requires all disputes, that is, all items not described in the "Exceptions" provision, be submitted to arbitration applies equally to both parties. The "Exceptions" provision, however, preserves People's Choice's judicial remedies as a creditor, namely, those remedies that seek only to protect its security interest in the loan transaction. In *In re FirstMerit Bank, N.A.,* the Texas Supreme Court considered a similar provision in an arbitration agreement which allowed the lending bank to seek judicial relief to enforce its security agreement, to recover the buyers' monetary loan obligation, and to foreclose. *In re FirstMerit Bank, N.A.,* 52 S.W.3d at 757. The Court rejected the proposition that an arbitration agreement requires mutuality of obligation because the principle of unconscionability is one of preventing oppression and unfair surprise and not of disturbing the allocation of risks because of superior bargaining power. *See id.* The Court determined that the arbitration agreement was not conscionable merely because it excepted claims that essentially protected the bank's security interest. *See id.* at 758. In this regard, we find the arbitration agreement in this case no different from the agreement at issue in *In re FirstMerit Bank, N.A.* Because People's Choice only retained judicial remedies related to protecting its security interest, we find that the arbitration agreement is not unconscionable on this asserted ground.

Lastly, the Jimenezes' counsel argued at the hearing that the arbitration agreement was substantively unconscionable because the other defendants would not be subject to arbitration and thus, the cause would still remain in the trial court. An arbitration agreement, however, must be enforced despite the presence of other parties whose claims are not subject to arbitration. *See Prudential–Bache Securities, Inc. v. Garza,* 848 S.W.2d 803, 807 (Tex.App.-Corpus Christi 1993, orig. proceeding). We find that the arbitration agreement was not unconscionable merely because the Jimenezes must submit to arbitration while still continuing their lawsuit against the remaining defendants. Because the Jimenezes failed to prove any defenses to avoid enforcement of the arbitration agreement, we conclude that a valid arbitration agreement exists between People's Choice and the Jimenezes and that agreement encompasses the claims asserted against People's Choice. Therefore, the trial court clearly abused its discretion in denying the motion to abate and compel arbitration. Since People's Choice has no adequate remedy by appeal, mandamus relief is appropriate. *See Tipps,* 842 S.W.2d at 272–73. Accordingly, we sustain all four issues raised by People's Choice in its petition.

We conditionally grant the petition for writ of mandamus and order the trial court to vacate its December 3, 2004 order denying arbitration and to enter an order granting People's Choice's motion to abate and compel arbitration in accordance with this opinion. The writ will issue only if the trial court fails to do so. We withdraw our

December 30, 2004 order staying all proceedings in the trial court.