

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

_____

## No. 08-24-00410-CV
_____

Patriot Power Group, LLC, Appellant

v.

Fasken Oil and Ranch, Ltd., Appellee

---

On Appeal from the 109th District Court
Andrews County, Texas
Trial Court No. 23,403

---

## MEMORANDUM OPINION

Appellant Patriot Power Group, LLC (Patriot) and Appellee Fasken Oil and Ranch, Ltd. (Fasken) entered into a contract containing an arbitration agreement. After Fasken sued Patriot, Patriot moved to compel arbitration. Fasken opposed the motion, contending Patriot waived its right to enforce the arbitration agreement because it failed to negotiate prior to moving to compel arbitration. Fasken also argued there was no mutuality of obligation because of a carve-out provision in the arbitration agreement. Finally, Fasken maintained that the court rather than the arbitrator was tasked to decide whether the agreement was enforceable. Concluding that the issues

pertaining to the agreement's enforceability are for the arbitrator to decide, we reverse the trial court's order denying Patriot's motion to compel arbitration.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The parties' agreement

Patriot provides electrical power through "power generation equipment and related services[.]" Fasken owns an oil and gas operation site in Andrews, Texas, which requires supplemental electrical power. In October 2023, the parties entered into a service agreement in which Patriot agreed to provide Fasken supplemental electrical power at its business site (the service contract). The service contract's "Dispute Resolution" provision states:

> All disputes arising in connection with this Agreement shall be settled, if possible, by negotiation between the Parties. If settlement cannot be reached by negotiation, then the dispute shall be settled finally by arbitration to be conducted in accordance with the Rules of Arbitration of the American Arbitration Association, in effect on the date of the institution of arbitration by either Party.

The service contract contained a paragraph labeled "Waiver of Right to Jury Trial" in capital letters indicating that the parties had "FULLY DISCUSSED" the arbitration provisions and that, without exception, "EACH PARTY HEREBY WAIVES ITS RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT." It also contained a "carve-out" provision, stating that "[n]ot withstanding" the preceding arbitration agreement, Patriot was allowed to file a lawsuit to recover any of its "[e]quipment or other chattel in which [it] holds or claims title or other interest, which has been taken or detained by the Customer or any third party[,]" and such filing "shall not be deemed incompatible with, or a waiver of, this agreement to arbitrate."

### B. Fasken's lawsuit

On May 13, 2024, Fasken sent Patriot a notice of default, claiming Patriot had breached the service contract by, among other things, providing Fasken non-operational equipment. Fasken

2

demanded reimbursement for the fees and expenses incurred as the result of the alleged breach as well as removal of Patriot's equipment. Patriot removed its equipment, but the parties did not resolve their dispute over damages outside of litigation.

On August 8, 2024, Fasken sued Patriot for breach of contract, common law fraud, unilateral mistake, and unconscionability, alleging that prior to entering the contract, Patriot misrepresented the type of equipment it would provide. Fasken alleged Patriot instead provided used equipment that "could never meet the emissions standards applicable to Fasken's use[.]" According to Fasken's petition, the parties had unsuccessfully spent months trying to make the equipment work before Fasken filed suit. In addition to damages, Fasken sought a declaratory judgment that the parties' agreement was invalid due to a failure of consideration and lack of mutual assent, or alternatively, that it was unenforceable due to "impossibility, impracticality, and frustration of purpose" and/or "unilateral mistake." Fasken also sought a declaration that the arbitration agreement was unenforceable as procedurally and substantively unconscionable, obtained by fraud or duress, and lacked "a mutuality of obligation."

### C. Patriot's motion to compel arbitration

On September 16, 2024, Patriot moved to compel arbitration and stay the proceedings pending the resolution of its motion. Patriot argued that the question of whether the parties' dispute was subject to arbitration was for the arbitrator to decide, since the parties' agreement provided that arbitration was to be governed by the "Rules of Arbitration of the American Arbitration Association[] in effect on the date of the institution of arbitration by either Party." In turn, Patriot asserted that the relevant AAA rules provide that issues of arbitrability—including the existence, scope, and validity of an arbitration agreement—are generally for the arbitrator rather than the court to decide. In the alternative, Patriot urged the court to determine that the arbitration

agreement was valid and enforceable, was not unconscionable, was supported by sufficient consideration, and that Fasken's claims all fell within its scope.

Fasken opposed the motion on three grounds. First, it contended the court should decide whether a valid arbitration agreement existed, as the 2022 AAA rule revisions provide that the rules apply only to cases in which arbitration is already underway. By agreeing to apply the AAA rules, Fasken argued, the parties did not intend to take away the court's right to determine whether a valid and enforceable arbitration agreement existed. In turn, it maintained the agreement was not valid due to "certain contract formation defenses," including: "Unconscionability"; "Lack of consideration"; "Lack of mutuality"; "No meeting of the minds"; "Fraud and/or fraudulent inducement"; and "Duress." Second, Fasken argued the arbitration clause was unenforceable because of the carve-out provision, i.e., because Patriot could unilaterally opt out of arbitration "at any time under other provisions of the Agreement." Third, it argued Patriot "waived its right to invoke arbitration by failing to negotiate toward a resolution, as is required by the plain language of the arbitration clause[.]" Fasken also asserted that, although Patriot was working on a settlement offer as late as June 2025, it filed suit on August 8, 2025, due to a provision in the service contract requiring the parties to file a lawsuit "within one (1) year after the date the cause of action occurs or reasonable discovery."[1]

Fasken provided an affidavit from Taylor Billingsley, the individual who signed the service contract as its "Oil and Gas Operations Manager." Billingsley first testified to the contract formation issues, claiming Patriot had represented it would provide Fasken a new gas turbine that would meet both Fasken's supplemental power needs and the "air emission standards and other regulatory requirements applicable to operating the Equipment as intended on Fasken's property."

---

[1] Fasken explained that while it believed the provision was void, it nevertheless filed its suit within the one-year period to avoid any claim that it waived its right to file suit.

Billingsley attested that Fasken entered into the service contract based on those representations, but Patriot failed to deliver.

Billingsley also attested to the parties' interactions over the issue prior to Fasken filing suit. He explained that while "Fasken spent months working with [Patriot] trying to get the Equipment to work," Patriot required Fasken to make payments during that time. Fasken then obtained supplemental power from a different vendor and sent a default notice asking Patriot to remove its equipment and compensate Fasken for its fees and expenses. According to Billingsley, the parties "worked together to coordinate the process of removing PPG's equipment from Fasken's property, which occurred in or about early July 2024." In addition, he averred that Patriot represented it was working with the turbine owner and would present a settlement offer "to see if there was a way to resolve the dispute absent litigation." He acknowledged that as late as June 2025, Patriot informed Fasken that "its attempts to come up with a solution were not dead." Billingsley asserted, "despite those assurances" and Fasken's attempts to obtain the promised settlement offer, Patriot did not provide the offer. According to Billingsley, Patriot "never engaged in any sort of settlement negotiations with Fasken to resolve the dispute" before Fasken filed suit.

In Patriot's reply, it argued the AAA rules applied, the current version of which still made the arbitrator responsible for determining the validity and enforceability of an arbitration agreement. Patriot further argued that even if the court were to decide whether the agreement was enforceable, Fasken's "waiver" argument was both legally and factually deficient. Specifically, the negotiation provision was a covenant rather than a condition precedent, and in any event, Billingsley's affidavit established that the parties did engage in settlement negotiations before Fasken prematurely filed suit. Patriot argued the carve-out provision was not appliable to the parties' current dispute and therefore did not render the remainder of the arbitration agreement invalid.

5

Following a non-evidentiary hearing, and without issuing any findings of fact or conclusions of law, the trial court denied the motion to compel arbitration. This interlocutory appeal followed.

## II. ISSUE ON APPEAL

On appeal, Patriot contends the trial court erred in denying the motion to compel arbitration because none of Fasken's arguments support the trial court's decision. In response, Fasken only addresses the question of whether Patriot waived the right to go to arbitration by failing to comply with the negotiation provision. We agree with Patriot that none of the three reasons Fasken gave the trial court to deny arbitration support the trial court's decision.

## III. APPLICABLE LAW AND STANDARD OF REVIEW

Arbitration is a contractual proceeding by which the parties, to obtain a speedy and inexpensive final disposition of disputed matters, consent to submit the controversy to an arbitrator for resolution. *See In re Phelps Dodge Magnet Wire Co.*, 225 S.W.3d 599, 605 (Tex. App.— El Paso 2005, orig. proceeding) (citing *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 268 (Tex. 1992) (orig. proceeding)). Because arbitration is a matter of contract rather than coercion, "parties cannot be compelled to arbitrate a controversy unless they have contractually agreed to do so." *TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694, 701 (Tex. 2023) (citing *Robinson v. Home Owners Mgmt. Enters., Inc.*, 590 S.W.3d 518, 521 (Tex. 2019)).

Ordinarily, a court decides whether an arbitration agreement is valid and whether the parties' claims fall within the agreement's scope; but because arbitration agreements are contracts, the parties can agree that the arbitrator, rather than the court, is required to make those determinations. *See Cerna as Next Friend of R.W. v. Pearland Urban Air, LLC*, 714 S.W.3d 585, 589–90 (Tex. 2025); *TotalEnergies*, 667 S.W.3d at 702 ("Because arbitration is a matter of

6

contract, parties can agree that arbitrators, rather than courts, must resolve disputes over the validity and scope of their arbitration agreement."). Thus, when parties have a dispute over whether they agreed to resolve their controversies through arbitration, which is referred to a dispute over arbitrability, the first question we must answer is "who (a court or the arbitrator) decides" the question of arbitrability. *TotalEnergies*, 667 S.W.3d at 701. "When an agreement unmistakably delegates questions of the applicability of the agreement to the parties' claims, a court must compel arbitration on the matters the parties delegated . . . [including] questions about the scope or validity of the arbitration clause in a given context." *Cerna as Next Friend of R.W.*, 714 S.W.3d at 590. Stated otherwise, "[a] delegation provision removes the court's power to decide such challenges." *Id.*

"We review the trial court's denial of a motion to compel arbitration for an abuse of discretion." *Truly Nolen of Am., Inc. v. Martinez*, 597 S.W.3d 15, 21 (Tex. App.—El Paso 2020, pet. denied). When, as here, the trial court denies a motion to compel arbitration without making findings of fact or conclusions of law, we will imply "all necessary findings of fact to support its ruling." *In the Estate of Guerrero*, 465 S.W.3d 693, 701 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (citing *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992)); and we will construe the record "in a light favorable to supporting the trial court's ruling." *Id.*; *see also Lassiter v. Bliss*, 559 S.W.2d 353, 358 (Tex. 1977) (when "[n]o findings of fact or conclusions of law were requested of or filed by the trial court . . . all questions of fact will be presumed and found in support of the judgment."). We will uphold the trial court's ruling on any legal theory urged in the trial court that is supported by the evidence. *See F.T. James Constr., Inc. v. Hotel Sancho Panza, LLC*, 657 S.W.3d 623, 629 (Tex. App.—El Paso 2022, no pet.).

# IV. ANALYSIS

We consider in turn each of the three grounds Fasken presented in the trial court to support its opposition to Patriot's motion to compel arbitration and conclude that none supports the trial court's decision to deny the motion.

### (1) Who is to decide arbitrability issues?

First, we consider whether the arbitrator, rather than the court, was tasked with determining whether a valid arbitration agreement existed, and whether the agreement failed due to contract formation issues. In general, a court is tasked with determining substantive questions of arbitrability, such as whether a valid and enforceable arbitration agreement, and whether the parties' dispute fits within the scope of that agreement. *See G.T. Leach Builders, LLC v. Sapphire V.P., L.P.*, 458 S.W.3d 502, 520–21 (Tex. 2015); *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding) (recognizing that "gateway matters" include whether the parties agreed to arbitrate and whether a claim or dispute is encompassed in the agreement to arbitrate). However, because arbitration is a matter of contract, the parties may decide that such issues are to be resolved by the arbitrator rather than the court. *See TotalEnergies*, 667 S.W.3d at 702; *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (recognizing that parties may agree to submit matters of substantive arbitrability to the arbitrator). However, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also TotalEnergies, LLC*, 667 S.W.3d at 702 (recognizing that "courts will only enforce an agreement to delegate arbitrability to the arbitrator if that agreement is "clear and unmistakable").

In *TotalEnergies*, the Texas Supreme Court held that the parties' agreement to conduct arbitration in accordance with the AAA rules is clear and unmistakable evidence that they agreed to delegate the issue of substantive arbitrability to the arbitrator. *TotalEnergies*, 667 S.W.3d at

8

709. Specifically, the court recognized that the AAA rules applicable to the parties' dispute in that case, which were adopted in 2013, required the arbitrator rather than the court to determine arbitrability issues. *Id*. (recognizing that AAA rules provide that the "arbitrator 'shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim'") (citing AM. ARB. ASS'N R-7(A) (2013)). The court further recognized that when the parties agree arbitration will be conducted in accordance with the AAA rules, those rules are incorporated into the parties' contract and are binding on them absent any conflict between the rules and the language in the parties' agreement. *Id.* at 709 (where parties' agreement "expressly states that arbitration must be conducted '*in accordance with* the rules of the AAA' and that the 'procedure of the arbitration proceedings shall be *in accordance with* the Commercial Rules of the AAA[]' . . . the parties incorporated the AAA rules into their arbitration agreement, and thus the rules are binding, at least absent any conflict between the two") (citing *Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 24 (Tex. 2014)).

Fasken does not deny that the parties agreed to conduct arbitration in accordance with the AAA rules, and it does not argue that there is any conflict between the AAA rules and the terms of the arbitration agreement. To the contrary, on appeal, Fasken appears to concede that the AAA rules apply. In the trial court, however, Fasken asserted that the AAA rules applicable to this dispute, which were amended on September 1, 2022, no longer require the arbitrator to decide issues of arbitrability. Fasken does not address this issue in its appellate briefing. Patriot points out that the 2022 revisions to the AAA rules do not appear to change the rule's requirements that the arbitrator must determine questions of arbitrability. The relevant AAA rule provides: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any

claim or counterclaim, without any need to refer such matters first to the court." *See* COMMERCIAL ARBITRATION RULES AND MEDIATION PROCEDURES R-7(a) (Am. Arb. Ass'n 2022).[2] The 2022 amendment's only change was to add the last phrase, "without any need to refer such matters first to a court." *DiTucci v. First Am. Title Ins.*, No. 21-4120, 2023 WL 382923, at *1 n.2 (10th Cir. Jan. 25, 2023) (recognizing that the sole change to Rule 7(a) is the addition at the end of the sentence of the language "without any need to refer such matters first to a court").

Our sister courts have recognized that Rule 7(a), as amended, continues to delegate issues of arbitrability to the arbitrator. *See Masterson v. SCI Texas Funeral Services, LLC*, No. 01-23-00496-CV, 2025 WL 2165176, at *7 (Tex. App.—Houston [1st Dist.] July 31, 2025, no pet.) (mem. op.) (concluding that the current version of Rule 7(a) of the AAA Rules delegates questions of arbitrability to the arbitrator); *Caprocq Core Real Estate Fund, LP v. Essa K. Alley Revocable Tr. No. 2*, No. 05-22-01021-CV, 2024 WL 4579064, at *10 (Tex. App.—Dallas Oct. 25, 2024, no pet.) (mem. op.) (concluding same); *see also Reid v. Tandym Group, LLC*, 697 F.Supp.3d 62, 77 (S.D.N.Y. 2023) (comparing the 2022 version of Rule 7(a) to the prior version and concluding that the current version continues to delegate questions of arbitrability to the arbitrator).

We therefore conclude that because the parties' arbitration agreement expressly incorporated the AAA rules, the trial court could not have denied Patriot's motion to compel arbitration based on Fasken's contract formation defenses, as those defenses were for the arbitrator to consider and resolve.

### (2) Does the carve-out provision void the arbitration agreement?

Next, we consider Fasken's argument that the carve-out provision allowing Patriot to sue to recover equipment gave Patriot the ability to unilaterally opt out of arbitration, thereby rendering

---

[2] https://www.adr.org/media/qielmf0g/2025_commercialrules_web.pdf

the agreement "illusory" or void for lack of mutuality of obligation. *See Whataburger Restaurants LLC v. Cardwell*, 545 S.W.3d 73, 81 (Tex. App.—El Paso 2017, no pet.) (recognizing that "[a]n arbitration agreement is illusory if it binds one party to arbitrate, while allowing the other to choose whether to arbitrate" (citing *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 505 (Tex. 2015)).

On appeal, Patriot notes that although the carve-out provision allowed it to sue to recover equipment—which was not the basis of Fasken's lawsuit—the arbitration agreement expressly stated that the carve-out provision "shall not be deemed incompatible with, or a waiver of, this agreement to arbitrate." Such carve-out provisions do not render the remainder of an arbitration agreement illusory or void for lack of mutuality. *See, e.g.*, *In re People's Choice Home Loan, Inc.*, 225 S.W.3d 35, 46 (Tex. App.—El Paso 2005, orig. proceeding) (rejecting argument that arbitration agreement was unconscionable or void for lack of mutuality because party "retained judicial remedies" relating to certain claims (citing *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757–58 (Tex. 2001) (orig. proceeding) (concluding that an arbitration agreement that excepted certain claims from arbitration was supported by mutual consideration and was not otherwise unconscionable)).

More importantly, the Texas Supreme Court has held that carve-out provisions do not affect the broader arbitration agreement's delegation to the arbitrator to decide issues of arbitrability and scope. In *TotalEnergies*, the court held "to the extent that the arbitration agreement carves out certain claims from arbitration, it does so from the [arbitration] agreement in general, not from the provision that incorporates the AAA Rules." *TotalEnergies*, 667 S.W.3d at 718–19. It therefore observed that "the carveout goes to the *scope of the [arbitration] agreement*—a question that the agreement otherwise delegates to the arbitrator—not the *scope of the arbitrator's authority* to decide questions of "arbitrability." *Id.* (emphasis in original) (citing

*Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 848 (6th Cir. 2020)). Accordingly, the court concluded, the fact that "the parties' arbitration agreement may cover only some disputes while carving out others does not affect the fact that the delegation agreement clearly and unmistakably requires the arbitrator to decide whether the present disputes must be resolved through arbitration." *Id.* at 719.

As such, we agree with Patriot that the carve-out provision in the arbitration agreement did not alter the fact that the parties delegated to the arbitrator the responsibility to determine issues of arbitrability. Therefore, the trial court could not have relied on the carve-out provision to deny Patriot's motion to compel arbitration.

### (3) How do we treat the negotiation provision?

Third and finally, we examine Fasken's argument that because Patriot allegedly did not comply with the arbitration agreement's negotiation provision, it was barred from seeking arbitration because complying with the negotiation provision was a condition precedent to arbitration.

In general, the question of whether a party has complied with a procedural requirement in an arbitration agreement, referred to as "procedural arbitrability," is for an arbitrator to decide. As the Texas Supreme Court has recognized, while a court is typically tasked with determining issues of substantive arbitrability, such as the existence and enforceability of an arbitration agreement (unless the parties have agreed otherwise), "issues of procedural arbitrability, *i.e.*, whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide." *G.T. Leach Builders*, 458 S.W.3d at 520 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 81 (2002)); *see also APC Home Health Services, Inc. v. Martinez*, 600 S.W.3d 381, 398 (Tex. App.—El Paso 2019, no pet.) (recognizing same). "[D]isputes about the meaning and application of particular

procedural preconditions for the use of arbitration" are also for the arbitrator to decide. *See G.T. Leach Builders*, 458 S.W.3d at 521 (citing *BG Group, PLC v. Republic of Argentina*, 572 U.S. 25, 34 (2014)); *see also Slaymaker v. Ballow*, No. 12-02-00381-CV, 2003 WL 21356034, at *2 (Tex. App.—Tyler June 11, 2003, no pet.) (mem. op.) (holding that "the issue concerning whether there existed any condition precedent under the contract was a matter to be determined by the arbitrator").

However, a narrow exception to this rule exists in cases in which "no rational mind" could question (1) whether the parties intended for a procedural provision to preclude arbitration, and (2) whether the provision was not fulfilled. *See, e.g.*, *Bonsmara Nat. Beef Co. v. Hart of Texas Cattle Feeders, LLC*, 603 S.W.3d 385, 398–99 (Tex. 2020) (citing *Gen. Warehousemen & Helpers Union Local 767 v. Albertson's Distribution, Inc.*, 331 F.3d 485, 488 (5th Cir. 2003) (interpreting "this rare exception to mean that a court will not order arbitration if 'no rational mind' could question [(1)] that the parties intended for a procedural provision to preclude arbitration *and* [(2)] that breach of the procedural requirement was clear") (emphasis added) (cleaned up)); *see also Seven Hills Commercial, LLC v. Mirabal Custom Homes, Inc.*, 442 S.W.3d 706, 722 (Tex. App.—Dallas 2014, pet. denied) (recognizing same) (citing *Amir v. Int'l Bank of Commerce*, 419 S.W.3d 687, 692 (Tex. App.—Houston [1st Dist.] 2013, no pet.)). Stated otherwise, as our sister court has recognized, "[t]he exception may apply and a court may determine procedural arbitrability questions when the issues are factually undisputed." *Seven Hills Commercial, LLC*, 442 S.W.3d at 722 (citing *In re Pisces Foods, L.L.C.*, 228 S.W.3d 349, 352–53 (Tex. App.—Austin 2007, orig. proceeding)).

Fasken contends this narrow exception applies, pointing to the negotiation provision in the parties' arbitration agreement, which states, "[a]ll disputes arising in connection with this Agreement shall be settled, if possible, by negotiation between the Parties," but "[i]f settlement

13

cannot be reached by negotiation, then the dispute shall be settled finally by arbitration to be conducted in accordance with the [AAA Rules]." According to Fasken, this provision clearly made negotiation a "condition precedent" to arbitration, i.e., "an event that must happen or be performed before a right can accrue to enforce an obligation." *See Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010) (defining the nature of a condition precedent). And Fasken maintains that the record contains undisputed evidence, in the form of Billingsley's affidavit, that the negotiation requirement was not met. In support, Fasken cites cases in which courts have applied the narrow exception in denying arbitration when the parties' arbitration agreement provided that mediation was a condition precedent to arbitration and the record clearly established mediation did not take place.[3]

But unlike the cases upon which Fasken relies, Patriot counters, the negotiation provision in the parties' arbitration agreement was not a condition precedent that would bar arbitration; rather, it was a covenant, i.e., a promise to act or refrain from acting in a certain way, the breach of which only supports a finding of damages and does not affect the enforceability of the agreement itself. *Solar Applications Eng'g, Inc.*, 327 S.W.3d at 108 (recognizing that "[a] covenant, as distinguished from a condition precedent, is an agreement to act or refrain from acting in a certain way"). In the alternative, Patriot maintains that even if the negotiation provision was a condition precedent to arbitration, Billingsley's affidavit did not clearly establish that it failed to fulfill any

---

[3] *See, e.g.*, *In re Pisces Foods, L.L.C.*, 228 S.W.3d 349, 353–54 (Tex. App.—Austin 2007, orig. proceeding) (based on the "undisputed record" before it, court held that trial court did not err in denying arbitration, where the parties' arbitration agreement expressly required mediation as a precondition for requesting arbitration, and where there was "no allegation or proof that either party requested mediation [or] that they held a mediation"); *Nordling v. Haake*, No. 14-20-00300-CV, 2022 WL 30056, at *3–4 (Tex. App.—Houston [14th Dist.] Jan. 4, 2022, no pet.) (mem. op.) (trial court did not err in denying motion to compel arbitration on plaintiff's claims, where, among other things, the arbitration agreement only provided for arbitration of claims that were "submitted to, but not resolved by, mediation," and there was no evidence that the claims in question were submitted to mediation) (citing *Southwinds Express Constr., LLC v. D.H. Griffin of Texas, Inc.*, 513 S.W.3d 66, 78 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (trial court decides as a matter of law the issue of whether arbitration can be compelled in light of a condition precedent when there is no factual dispute about whether the condition precedent has been satisfied); *Amir v. Int'l Bank of Commerce*, 419 S.W.3d 687, 692 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (same)).

duty it had to negotiate under the terms of the arbitration agreement. Patriot therefore concludes that the "narrow exception" to the rule that an arbitrator is to decide procedural arbitrability issues does not apply.

We agree with Patriot that the narrow exception does not apply in this instance. Even assuming for purposes of the appeal that the negotiation provision constitutes a condition precedent to arbitration—an issue we do not decide—the record does not clearly establish that the provision was not fulfilled. In other words, the evidence is not such that "no rational mind" could conclude that the requirement to negotiate, if any, was not met. *See Bonsmara*, 603 S.W.3d at 398–99 (discussing the "no rational mind" standard). In reaching this conclusion, we find two important distinctions between the present case and the cases upon which Fasken relies.

First, those cases all involve arbitration agreements expressly requiring the parties to mediate their disputes as a condition precedent to arbitration. In contrast, here, the arbitration agreement calls for the parties to attempt to settle their disputes "if possible, by negotiation." While a court may determine with certainty whether the parties to a lawsuit went to *mediation* prior to arbitration, the question of whether the parties attempted to *negotiate* their disputes prior to arbitration presents more of a gray area. As Patriot points out, mediation is a formal, objective alternative dispute resolution process with a third-party facilitator, while negotiation is an informal, subjective process between the parties without any such facilitator. *See Abbott v. GameTech Int'l, Inc.*, No. 03-06-00257-CV, 2009 WL 1708815, at *4 (Tex. App.—Austin June 17, 2009, pet. denied) (mem. op.) (recognizing that the alternative dispute resolution procedures in Chapter 154 of the Government Code, including mediation, "contemplates the participation of an impartial third party to facilitate the resolution of the dispute . . . [but does] not include informal settlement negotiations between the parties conducted without an impartial third-party facilitator") (citing Tex. Civ. Prac. & Rem. Code Ann. § 154.023–.027); *The Orchards on*

15

*the Brazos, L.L.C. v. Stinson*, No. 02-14-00172-CV, 2015 WL 1262641, at *5 (Tex. App.—Fort Worth Mar. 19, 2015, pet. denied) (mem. op.) (recognizing same); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 154.023(a) ("Mediation is a forum in which an impartial person, the mediator, facilitates communication between parties to promote reconciliation, settlement, or understanding among them."). Thus, while a "rational mind" may be able to determine with certainty whether mediation occurred or not prior to arbitration, it may not always be possible to know with any degree of certainty whether parties satisfactorily engaged in informal settlement negotiations prior to arbitration.

Second, and relatedly, contrary to Fasken's argument, the record before us does not contain undisputed factual evidence that would allow us to determine with certainty that Patriot failed or refused to engage in settlement negotiations before it moved to compel arbitration. The only evidence presented in the trial court on this issue was Billingsley's affidavit. Fasken asserts that because Patriot did not present any countervailing evidence to contradict the affidavit, the trial court could have denied arbitration based on Patriot's failure to comply with the negotiation provision.

We disagree with Fasken's assessment of Billingsley's affidavit. His affidavit did not clearly establish that Patriot failed to engage in settlement negotiations. Billingsley attested that after receiving Fasken's default notice requesting both equipment removal and damages, the parties informally resolved the issue of the equipment removal. In addition, he acknowledged Patriot informed Fasken on at least two occasions that it was preparing a settlement offer and was speaking with the equipment's owner to determine if they could "resolve the dispute absent litigation." While Billingsley observed that no settlement offer was forthcoming, Fasken has not provided us with any authority to support a finding that the failure to present a settlement offer

constitutes a failure to negotiate as a matter of law. Nor does the arbitration agreement itself expressly require a party to present a settlement offer as a condition precedent to arbitration.

Thus, even without countervailing evidence, Billingsley's affidavit did not provide clear or undisputed evidence that Patriot failed to fulfill the negotiation provision prior to moving to compel arbitration.[4]

Given the lack of clear and undisputed evidence, we decline to apply the narrow exception to the rule that the arbitrator rather than a court has the responsibility to decide whether conditions precedent, if any, to arbitration have been met. *See Seven Hills Commercial, LLC*, 442 S.W.3d at 722–23 (finding that the "narrow exception" to the rule that an arbitrator rather than a court was tasked with determining if the party moving for arbitration did not comply with a "strictly procedural requirement" did not apply absent "clearly established proof" of such); *Omoruyi v. Grocers Supply Co.*, No. 14-09-00151-CV, 2010 WL 1992585, at *8 (Tex. App.—Houston [14th Dist.] May 20, 2010, no pet.) (mem. op.) (where parties disputed whether a purported condition precedent to arbitration was met, the question of whether the failure to fulfill the condition was a procedural bar to arbitration was for the arbitrator, not the court, to decide).

---

[4] Patriot further points out that Fasken was the first to file its lawsuit thereby waiving its right to assert that the negotiation provision was not fulfilled. In support, Patriot cites opinions that have held, "even when [an arbitration] agreement requires the parties to mediate before arbitration" if the party opposing arbitration is the first to file a lawsuit, it "waives the right to mediation and cannot assert the mediation provision as a condition precedent to arbitration." *Nordling v. Haake*, No. 14-20-00300-CV, 2022 WL 30056, at *3–4 (Tex. App.—Houston [14th Dist.] Jan. 4, 2022, no pet.) (mem. op.) (citing *Rodriguez v. Texas Leaguer Brewing Co.*, 586 S.W.3d 423, 430 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (compelling party to arbitration, even though condition precedent of mediation had not been fulfilled, because party filed suit without first seeking mediation); *Nw. Constr. Co. v. Oak Partners, L.P.*, 248 S.W.3d 837, 852 (Tex. App.—Fort Worth 2008, pet. denied) (same). Fasken counters that we should not conclude it waived its right to assert the negotiation provision by filing its lawsuit when it did, contending it was effectively forced to file suit within one year of Patriot's alleged breach as required by the service contract. We conclude that the question of whether Fasken waived its right to raise the negotiation provision under these circumstances constitutes yet another question of procedural arbitrability, which is for the arbitrator rather than the court to decide.

We conclude that the trial court could not have denied Patriot's motion to compel arbitration on this or any other ground Fasken raised. Therefore, the trial court abused its discretion in denying Patriot's motion to compel arbitration. Patriot's sole issue on appeal is sustained.

## V. CONCLUSION

We reverse the trial court's order denying arbitration and remand the matter to the trial court to refer the parties' dispute to arbitration in accordance with their agreement.

LISA J. SOTO, Justice

January 27, 2026

Before Salas Mendoza, C.J., Palafox, and Soto, JJ.